## MARZITT v STATE

Ohio Appeals, 7th Dist, Mahoning Co
Decided Oct 3, 1930

D .F. Rendinell, Youngstown, for Marzitt.
R. L. Thomas, Youngstown, for State.

## STATEMENT OF FACTS

On the 7th of January, this year, an affidavit was filed before one of the justices of the peace of this county charging that on that day this plaintiff in error was in unlawful possession of intoxicating liquors. The affidavit further charged that she had prior to that time been convicted of two criminal offenses against the intoxicating liquor laws. She was tried in the court below and found guilty, and she is prosecuting this action to reverse that judgment. The first error complained of is that the judgment of the court below is manifestly against the degree of the evidence required to convict a person of this offense in this state. It appears that the accused is an unmarried lady and her home is out near East Alliance in this county. She was living in at least a couple of rooms on the second floor or upstairs of this house. On the night of this day, probably about eleven or twelve o'clock, these officers, who were deputy sheriffs, or at least three of them were, and possibly the fourth was in some way connected with that office, went to the home of this lady and made their presence known. It seems as though she answered, but there is a dispute about what she said. At least part of the officers claim that she said, in substance, that she would not come downstairs, but anyway the officers broke in a panel in the door, unfastened it and went upstairs to the rooms of this lady, and they claim that in what is denominated a kitchen they smelled intoxicating liquors, and at least one of these officers claims to have found a pitcher with a very small quantity of liquor in it, indicating, as they claim, that there had been an effort made just before their entry to dispose of intoxicating liquor. They then opened what is known as the trap in the waste pipe of the sink and drew out a bottle full of liquid, which was tested and found to contain fifteen per cent of alcohol. As we have said, this lady denied she refused to come down; in fact, she says that she had started to come down before the door was broken in, and the officers do not agree upon what occurred in getting into this house, but there is no contradiction of the fact that this liquid was taken from the trap of the sewer pipe, and that it contained an amount of alcohol to make it illegal to possess.

The accused testified in her own behalf and denied that she had any knowledge of this liquor, denied that there was any

pitcher there, or liquor in the pitcher, in fact denied that she owned a pitcher or had a pitcher in this room. She also called three witnesses, young men, possibly, who testify that on this evening they went to the home of the accused and asked if they could play some games of cards. She gave them permission and after doing so she left the room and called on a neighbor lady. While she was gone a fourth man came in and he had a bottle of intoxicating liquor, and after these men sampling it and pronouncing it very bad, he concluded to empty it into this sink. We might also say that there was testimony that at least some times, if not always, she had sandwiches and pop which people were in the habit of coming there to purchase. There is testimony that quite a number of men were frequently seen going in and out of this house. So that there was an issue on the question of this woman's guilt. If defendant's evidence was true, she was guilty of this offense, so that it was a question for the jury. Probably the jury had some difficulty in believing that this liquor was so bad that it would be dumped in the sink. Anyway, the jury came to the conclusion that she was guilty, and as far as the weight of the evidence is concerned this court could not reverse the case on that ground.

There is another error complained of, and that is that the representative of the state in his argument was guilty of misconduct. The argument, or quite a good portion of it, at least, is set out in the Bill of Exceptions, and our attention was called to a good portion of the argument as being misconduct. The greater part of it to which our attention is called are conclusions drawn from the facts testified to, and of course it is legitimate to do so. We should say some of these conclusions are rather vigorous, but we do not think that part of it is sufficient to affect this judgment, but there are some things in this argument that we want to call attention to. On page 169, after speaking as we have said, these remarks follow:

"What kind of a woman is she? I might make some bold statements as to what I know she is. What do you suppose they are going there for? They are going there for some unlawful purpose. If there weren't some women on this jury I would tell you what kind of a woman and animal she is, being the kind of woman that would sell her body to any kind of man who comes along."

If the women had been absent from the jury we do not know how a much stronger statement could have been made. There is an objection to this statement and the court remarks:

"As I remember it the last statement is not founded on any evidence in the case."

Then the attorney goes on:

"I might say to this jury as far as I am concerned this jury is entitled to infer from the facts prevailing out there and from these visits just what kind of a character she is."

Then after some more remarks, in fact upon objection to that remark the court said:

"Council has a right to make his own inferences in this last statement."

Then after some remarks by counsel arguing the case, he says:

"Do you think this is just a bona fide residence where an innocent little girl is staying? Do you think these men are just going there to play a little cards and to see Rena? They are going there for some unlawful purpose, and that purpose is to get some liquor and a few other things I haven't hesitated to mention to this jury."

There was evidence tending to show that men were seen going in and out of this house, and that is as far as any evidence in this case goes as to any unlawful acts that are suggested in these remarks. These remarks are not conclusions drawn from any evidence but they are what the attorney arguing the case says he could tell the jury and was telling them. It was his own testimony, which of course is not proper to be made in the argument of a case, and there is another more serious reason why these statements should not be made and left as they were to the jury, and that is jurors are not presumed to know that their verdict must be founded upon the charge in the indictment or affidavit, as it was in this case, and might readily, if they came to the same conclusion as the attorney arguing the case, that it was for this other unlawful act, they might readily have found in favor of the accused as far as intoxicating liquor is concerned and presumed she was guilty of the other offense and return a verdict on the other offense. So that we think that this is such conduct as should reverse this case.

Again, there has been some reference made by the attorney representing the accused to the sentence in this case. Then the attorney arguing this case to the jury proceeds to say, in substance, that it was optional with the court whether he should sentence her to prison or a fine. That part of it was called to his attention by the court, who asked him to see whether that was correct or not, and the court in his charge referred to this and corrected the misstatement as to the provision of the law, so possibly the judgment ought not to be reversed on that ground, but attorneys arguing these cases should remember that the sentence is wholly a matter for the court and should not be taken into consideration by the jury in arriving at a verdict, but there is a remark after what we have said, in the latter part, as follows:

"The penalty is strictly a matter for the court for his consideration. Even if the verdict would be guilty, if the court thought a sentence might be justified, he might not put the sentence into effect."

In other words, the attorney was saying to the jury that "Even if you return a verdict and the court thought it was justified, yet if he did not wish to do so he need not put the verdict, or rather the judgment, into effect, need not sentence him." It is urged that that is correct because he could set aside the verdict and grant a new trial, so that that is a correct statement. Granting that it was a correct statement, it would be improper for such statement to be made to the jury. So far as they are concerned their verdict should be one wholly of their own judgment after proper charge by the court and not anything that they think the court might do afterwards. We do not think even that, unless the court violated the Code, he could do as stated. It is his duty, unless he thinks the judgment for some reason should be set aside, to sentence the prisoner. The jury might be very doubtful that the State has made a case, yet they may feel that if they did make a mistake the court could correct it by refusing to impose sentence. So that we think for these remarks of the attorney who was then in charge of the case for the state, the judgment should be reversed and the cause remanded to the Court of Common Pleas.

Roberts and Farr, JJ, concur in the judgment.