## TURNER v STATE

Ohio Appeals, 2nd Dist, Montgomery Co

No 1371.   Decided Feb 8, 1936

Walter Connors, Dayton, and Jacobson & Durst, Dayton, for plaintiff in error.

Nicholas Nolan, Pros. Atty., Dayton, Sam Kelly, Dayton, and C. W. Magsig, Asst. Pros. Attys., Dayton, for defendant in error.

### OPINION

By THE COURT

The plaintiff in error, as defendant below, was charged with the offense of murder in the first degree while in the perpetration of a robbery, tried, convicted and after motion for new trial was overruled sentenced to death.   Error is prosecuted from the judgment and the grounds asserted may be grouped under two headings: first, that the evidence does not support the verdict and judgment and second, misconduct of counsel for the State during the trial of the cause in the final argument to the jury.

The facts pertinent to a consideration of the errors presented are, that one Lester Smith owned and operated a gambling house on Harvard Avenue in the City of Dayton.   The house was on the west side of the street.   There were rooms at about the street level and a downstairs, in which

there was no partition but which was divided by a beam across the ceiling. The entrance into the house was made from the street and into the basement by means of a stairway which from the kitchen above went down to a landing, which landing turned at right angles to the left of the stairway. In the basement there were two tables, one large and one small. The large table was near the wall and directly in front of the landing at the bottom of the stairway.

On the night of May 1, 1933, the defendant, Julius Turner, was in the Smith place, known as "Smitty's Place." At this time and prior thereto a number of men and women were in the upper rooms of the house drinking and dancing to the music of a victrola. In the downstairs Turner and a number of other men were engaged in a gambling game known as "skin." Turner played until he had lost and then left the game. Some of the witnesses say he also left the room. He says that he merely left the table and remained downstairs. Sometime later Turner appeared at or above the landing of the stairway with a revolver in his hand, menaced those who were playing and about the table, said to them, "Leave the money there," or made a somewhat different statement of the same import. One player, Abe Chester, undertook to remove his money and Turner stuck the revolver in his ribs and told him to put it down, then took the money from the table and from the players, moved over to the landing with his gun pointed toward the men in the basement, and started to move on up the stairs.

There is discrepancy in the testimony repecting the manner in which he moved up the stairs. Some witnesses say he backed up; others say he went up sidewise and he said that he backed up all the way. One witness, Bruce Banks, says that he saw Turner turn while near the bottom of the stairs and shoot up the stairs. Soon after the shot one Henry Webb, who had been upstairs in an intoxicated condition, came down the stairs. Again there is discrepancy in the testimony. One witness says that he fell, several witnesses say that he braced himself against the wall and came down the steps. One or two witnesses say that he held to a bannister. All who say that he came into the basement agree that he had been shot. One witness, Bruce Banks, says that he helped Webb out of the stairway and placed him on a table; that he made inquiry if anybody got shot and Webb said: "Nobody got shot but me;" that Webb was shot in the neck, the bullet

hole going through the front of his tie; that he removed the tie and saw the bullet hole in it.

Turner admits the robbery and substantially the statement of the men in the basement as to the manner of its occurrence. He further says that he backed up the stairway its full length and as he was at the top of the steps he was struck from behind; that he turned. and that Smith grappled with him, grabbed the hand in which he held the gun and in the ensuing scuffle the revolver was discharged.

No witness testified that there was more than one shot fired, although Smith says that he was of the opinion that there were two shots fired. Smith says that he did not strike nor grapple with Turner; that he saw Turner coming up the stairs after he (Smith) had heard the commotion in the basement and the cry of "holdup" and that he immediately moved in back of a door; that Webb, who was drunk, had followed him and got into the line of the fire from Turner's revolver as he shot up the stairs.

Two witnesses among those in the basement say that sometime prior to the shooting Turner and Smith had some difficulty respecting the conduct of the "skin" game. It appears from at least two witnesses that Smith was accusing Turner of marking cards by bending them and Turner says that Smith was cheating by secreting cards in his trousers, about his person and in his hand. Smith denies any controversy whatever with Turner.

Both counsel for the defense testify that Smith told them that the shots were fired by Turner from the upstairs; that there were three shots, two of which came very close to Smith's chin; that he could see Turner go by him in the dark, and that they were close enough to each other that he felt Turner's breath as he passed. It thus appears that Turner's defense was that he was not guilty of purposely shooting Webb, but that he was shot by reason of the accidental discharge of the gun, caused by the combat between him and Smith.

It is the claim of the State that Webb was shot by Turner from downstairs; that preceding the shooting Turner had said as he started up the stairs, in substance: "Don't come down," and that a voice from above said: "I'm coming down," that Turner then immediately shot.

Upon the evidence the only condition under which the jury could have rendered a verdict different than murder in the first degree would have been in the event that it believed the testimony of Turner. He

was the only witness whose evidence would tend in any degree to support the claim that the shooting was accidental. Smith's testimony may have been somewhat shaken by the contradictory statements which counsel for the defendant imputed to him, but if the jury gave full credence to their testimony it would only affect the credibility of Smith and if his entire statement on the subject matter should be removed from the record there remains sharp and direct conflict between the witnesses who were in the basement and Turner. There is ample support in the record for the verdict which the jury rendered. There are, of course, discrepancies which are but natural and which are always to be found following occurrences such as happened in this case. No doubt the witnesses were badly frightened and the holdup and shooting being unusual and terrifying it is not to be expected that they would recall with particularity all details or that their statements, if true, would agree in detail. There is, however, running through the whole fabric of their stories a similarity which supports the claim of the State that Turner shot Webb while he, Turner, was at a point some place near the bottom of the stairs, as Webb was either at the top of or coming down the stairs. Upon the testimony of the witnesses for the State there can be little or no doubt that Webb did come into the basement and that he was shot immediately prior thereto.

The coroner, Dr. Morris P. Cooper, who conducted a post mortem soon after the death of Webb, said that the bullet which caused the death of Webb entered his body just to the left of the mid-line in the left half of the chest, and that it took a course slightly downward. From this it is urged by counsel for the defendant that the shooting must have taken place upstairs; that, if the revolver had been discharged when directed from the bottom of the stairs upward as Webb was moving down the steps the course of the bullet could not have been downward. The difficulty with this claim is that there is but one witness who undertakes to fix the posture of Webb as he came down the stairs, namely, Smith, and he says that Webb was bending over, staggering. as he came into the line of fire.

Subject only to this one bit of testimony the record is silent as to the position of Webb when he was shot. It is not beyond the realm of probability that he was bending over and forward if he was shot at the top of or as he came down the stairs, and that a bullet though projected from below might have taken a slightly down-ward course in his body. The defendant had the right to draw the inference which it urges upon us, that the course of the bullet was inconsistent with the theory of the State, but upon the whole it is not such an inconsistency as would affect any material element of necessary proof by the State nor is there any such disparity in the testimony which would require a reversal of the verdict and judgment in the weight of the evidence.

The claimed error touching the closing argument of one of counsel for the State is divided into four branches, the first of which relates to the following part of the arguments as transcribed from the record:

"(1) I give you that from my heart, for even though I am here as a prosecutor, when I sink so low that I plead for the conviction of a man that I don't believe is proven guilty beyond a reasonable doubt. just that quick I want to be taken out of the harness. Never will I ask any jury for that which I am not satisfied in my heart and my conscience is right under the law and under the facts."

And later, referring to the duty of the Prosecuting Attorney:
"He never has a duty to prosecute an innocent man, for as a matter of practice he won't do it. I know those in charge of this prosecution won't do it."

And later,
"Now the prosecution's position is not exactly like yours, but we don't urge the conviction of a man whom we believe to be innocent, although we will share the responsibility of whatever your verdict is, if it happens to be a verdict that we are asking for."

It is asserted that this is a statement of the personal opinion of counsel not based exclusively upon a weighing of the evidence in the case and that such statement amounts to misconduct and was prejudicial.

We are cited to the case of State v Thayer, 124 Oh St, 1, where the court reversed a verdict of conviction upon the argument to the jury of special counsel for the State. We will not quote it, but in the main the trend of the argument is much like that under immediate consideration. There may be a distinction in part between the argument in the cited case and the instant argument. In the Thayer case counsel for the State clearly indicated that his opinion of the guilt of the defendant was predi-

cated in part upon an investigation that he had made of the case prior to the trial, and the effect of this investigation which may or may not have included the facts developed at the trial, led, in part at least, to the opinion which he expressed to the jury. This in substance was the stating of an opinion made up independent of the record in the case in a way that was clearly improper. It does not necessarily appear in the argument of counsel in the instant case that he was not predicating his statement of belief in the guilt of the defendant upon the evidence before the jury although the allusion to the prosecutor is not so limited. Arguments of the character of the one under consideration are almost without exception held to be improper and many times have been found to be prejudicial. In People v Haas, 85 Mich., 128, it is said:

"It is not proper for the prosecutor to tell the jury that he believes the defendant guilty, as his belief is not evidence in the case; but he has the right to argue from the testimony that the defendant is guilty and to state to them that the evidence before them convinces him and should convince them of defendant's guilt."

No objection was noted by counsel for the defendant to that portion of the charge above quoted.

In an annotation found in 1918-D, L.R. A. p. 4, et seq., the annotator in summarizing the cases on the question considered said, p. 72:

"Closely allied to the offenses of zealous counsel who relate to the jury their personal experiences and facts within their personal knowledge, without taking pains to prove them on the trial, is the misconduct of the advocate who expresses to the jury his personal belief in the merit of his own or demerit of the opposite side of the controversy his hearers are to decide. None questions the impropriety of such conduct. The most frequent offender of this class is the public prosecutor in a criminal trial who tells the jury that he believes the accused to be guilty of the crime for which he is being tried * * *. The exception seems to be the case where the belief is based upon actual evidence of guilt introduced on the trial."

Error is directed to the following argument:

"(2) The court is here to do justice to the community and to this defendant. Your position is identical with his in those re-

gards. Of course, it is his further duty to give you the law which shall control you. He has nothing to do with the facts. He can't decide the issues of the case. You are the sole judges of the facts, but he can do this, under the law. If you would make a mistake and find this man guilty of an offense greater than what this proof showed, he would have the right to reduce it. Right there, if you in your conscience decide this case as you see it under the law, and if there is a possibility of a mistake, above you with the right to change it is this court, and the Court of Appeals, and again the Supreme Court.

MR. CONNORS: I object to that.

THE COURT: Counsel has a right to argue to the jury to perform its duty under the law and the facts. As to what happens to the case further, is a matter of procedure."

The effect of this statement to the jury may have had a part in bringing a verdict which otherwise it would have hesitated to return. Standing alone and without further explanation it is highly improper because it undertakes to state the law but leaves an erroneous impression of its scope and effect. There were but three forms of verdict which the jury could properly have returned under the evidence: murder in the first degree without recommendation of mercy; murder in the first degree with recommendation of mercy; and manslaughter. The right to recommend mercy in the event that the jury returned its verdict for murder in the first degree is a purely discretionary right vested solely in the jury and which no court would have any right to modify or review. Inasmuch as the recommendation of mercy is a right extended to the jury only, no court could modify that recommendation nor could a court extend mercy if the jury returned a verdict of first degree murder without recommendation of mercy. The burden of the State to convict the defendant of any offense with which he was charged was to establish proof of the elements of such offense beyond a reasonable doubt. The statute, §13449-1, part 4, GC, which authorizes the trial judge to modify a verdict, fix a lesser crime or reduce the degree of crime without granting or ordering a new trial, and which right is extended to any reviewing court, shifts entirely the burden from the State to the defendant. The condition under which any court may reduce the degree of guilt is predicated upon a finding that the evidence shows the defendant to be **not guilty** of the degree of crime for which he was

convicted. Thus, to say to the jury that if there is a **possibility** of a mistake in its verdict it will thereafter be corrected by some court in connection with a mis-statement of the power of such courts or the conditions under which the power could be exercised was manifestly misleading and tended to cause the jury to have a misconception of its obligation in reaching a verdict.

An argument by the prosecutor much like that under consideration was discussed in **Crobaugh v State, 45 Oh Ap, 410, (12 Abs 404),** and the court held in the 4th proposition of the syllabus:

"It is misconduct for a prosecuting attorney to argue to the jury that, if it errs in returning a verdict of guilty, its error will be corrected by the trial judge or a reviewing court."

The court says:

"The argument was improper, not merely because it related to the law, but because it was a misstatement of the law. It was an invitation to the jury to shed some of its responsibility and console itself for any mistake it might make in returning a verdict of guilty by the thought that the trial court, or a reviewing court which did not agree with the jury, was at perfect liberty to substitute another judgment for the jury's judgment. This of course, is not the law, and was an invitation to the jury to perform its duties with a lesser sense of responsibility than it would have done had it realized that its finding upon the facts could only be disturbed when either the trial judge or some reviewing court found the verdict to be manifestly wrong."

See also **Deutsch v State, 46 Oh Ap, 223 (13 Abs 456); Marzitt v State, 9 Abs, 9.** As late as last December, our Supreme Court in the case of **The Cleveland Ry. Co. v Crooks, 130 Oh St, 255, OLR Dec. 23, 1935** expressly disapproved of an argument of counsel to the jury in which he said in part:

"The responsibility of a verdict, the size of a verdict, does not necessarily rest with you. If the verdict is excessive in amount, the responsibility is not with you. Remember this when that comes in your mind, are we giving her too much. Say to yourself, well, the court's responsibility takes care of that, because if we give her so much too much he has a right to cut it and put it where it belongs."

The court found that the statement resulted in passion and prejudice in its influence on the deliberation of the jury and reversed the cause. It is recognized that the rule is more strict in limiting argument of counsel in criminal cases than it is in civil cases.

The next part of the argument to which objection is directed is as follows:

"(3) Now, I have had some experience on the opposite side of this table, and I know it is done, and I don't think any lawyer at this bar would cause a defendant to deliberately perjure himself. They might give him a suggestion, but they wouldn't put it right in his face. They might say something like this: 'Turner, did you rob this man?' Turner: 'Yes, sir.' 'You had the gun?' 'Yes, sir.' 'Was the gun discharged?' 'Yes, sir.' 'A man killed as a result of the discharge?' 'Yes, sir.' 'Now, listen Turner, I don't want to hear another thing about it. I want to give you the law. The law is that whoever purposely kills another while perpetrating a robbery, which you admit, is guilty of murder in the first degree, so your only cut is on the question of purpose."

MR. CONNORS: I dislike to interrupt, but he is certainly insinuating something about Mr. Jacobson and I that we have never been charged with or found guilty of in twenty-one or twenty-two years, and I want him to correct it.

THE COURT: The court doesn't understand that counsel is arguing that counsel for the defendant have had the defendant testify to anything. There is no evidence of that at all. Nor was there evidence that the officers had used any force with these witnesses. That part of the argument of counsel for the defendant was incorrect."

Continuation of the argument:

"It always seems strange to me, ladies and gentlemen of the jury, in an open court room, before a jury and a few onlookers, it is human nature for all of us to try to appear holier than thou. I am talking facts. I am talking by the book. No lawyer causes a man to perjure himself, and these men didn't cause him to perjure himself, but in that mind of his that didn't know the law of murder in the first degree, they planted the thought by telling him that if this shot was accidental, it was manslaughter, and not murder in the first degree.

MR. CONNORS: I object. We did not do that.

MR. KELLY: O.K.

THE COURT: The court will strike that part of the argument from the attention of the jury and ask counsel not to repeat that point of argument."

And later:

"Because the defendant's counsel owes no duty to anyone in the world but the defendant. He owes nothing to the State of Ohio. He's got this man and his business is to get that man off of this charge, stopping at nothing short of perjury, stopping at nothing short of fixing testimony—that is his duty.

THE COURT: The court doesn't assume that counsel is criticizing the present counsel at all.

MR. KELLY: I am not, Your Honor.

THE COURT: The jury will not consider that the slightest thing has been done wrong by counsel for the defendant. There is no evidence of it at all."

The court clearly sensed the impropriety of the argument and on its own motion correctly admonished the jury. There was nothing in the record from which the inference drawn by counsel could properly be made. Without respect to what counsel for the state may have said touching the intended implication of his remarks, their natural effect was to impute improper conduct to counsel who were defending.

The fourth branch of the brief of plaintiff in error relates to the following part of argument of counsel for the state:

"(4) You will read in the newspapers and the magazines, and you will see the crime tree with the criminal lawyers the biggest root. It is not the criminal lawyer that is responsible for all the crime that goes on throughout this country. It is weak-kneed juries that can't live up to their oaths."

And later:

"The court will read you the section, that the penalty for manslaughter is from one to twenty years; and the penalty for robbery is ten to twenty-five years. He admits the robbery that will get him ten to twenty-five years. And he comes in here and a jury hands him one to ten. Wouldn't you look like a fine bunch when you walked out of here to meet your friends? Admit something that will give him a minimum of ten years, and you hand him something that will give him one."

And later:

"In other words, there's always a chance to beat the game. You can always settle with your creditors for a few cents on the dollar, and just as long as juries all over these United States put out that idea to prospective criminals that it's easy to set-tle for crime, just that long we are going to have and continue to have crime in increasing amounts."

This argument included a mis-statement of law of the case. Turner was not charged with robbery except as an element of the offense of murder in the first degree. No verdict was submitted to the jury which would have permitted it to have found him guilty of robbery. Thus there was no admission of an offense that would cause him to serve ten to twenty-five years. The punishment following conviction is not of concern to a jury. Its determination relates to the facts under the law as announced by the court.

Although it is not assigned as a ground for error, inasmuch as this case will in probability be tried again, we conceive it our duty to say that that part of the final argument wherein the defendant was called upon if he desired to retract a statement made by his counsel to the jury to the effect that "We do not want mercy," or if he desired mercy to rise and so state and upon his failure so to do he, counsel, would assume that Turner did not want mercy, was improper argument. It is not necessary to protract this opinion by delineating the reasons which constituted its impropriety and we will be content merely to direct attention to it.

We have discussed the parts of the closing argument of counsel for the state to which error is directed. The State urges that the misconduct of counsel in the argument, if it could be so characterized, could not have been prejudicial because the jury could have reached no other verdict than that which it returned. We are cited to Sisson v The State, 19 O.C.C. (N.S.) 99. In probability we could upon this record, notwithstanding the flagrant error to which we have directed attention, support a verdict of the jury of first degree murder were it not for the invasion of the province of the jury touching its recommendation of mercy. Nor do we find anything in this record which would prompt us, if within our prerogative, to recommend mercy. This right, as we have heretofore stated, is exclusive with the jury. It is also urged that some of the remarks of counsel in closing argument were prompted or provoked by argument of counsel for the defense. It sometimes follows that more latitude is granted an attorney if his comment has been provoked by inordinate or unjustified statements of his opponent. However, none of this is properly before us because we

282

do not have any of the arguments of counsel for the defendant.

It also appears that objections were not made to all of the argument which is made the subject of consideration in this opinion and which has been assigned as error. Objection was urged to enough of the argument which we have found to be improper and prejudicial to require reversal but the nature of the statements to which our attention has been directed is of such a character as to be prejudicial though the trial court may have on its own motion immediately taken cognizance of their improper character and admonished the jury to disregard them. The duty of a trial court at all times to maintain a strict regulation over the conduct of counsel to the end that no improprieties may occur which will result in a mis:rial is well stated in the leading case of **Hayes v Smith, 62 Oh St, 161.**

It is most unfortunate that this case, which up to the time of the conclusion of the testimony does not disclose the slightest evidence of error should in its final stages be so conducted as to require its retrial. It is essential to the orderly administration of justice in civil suits and especially in criminal cases that all that is done or said shall insofar as possible tend to maintain an impartial attitude free from passion or prejudice on the part of the jury.

A fair consideration of the whole of the closing argument for the State is convincing that in many particulars it constituted misconduct which has almost without exception been declared by our courts to be prejudicial. We would be disposed to and probably could disregard some of the parts of the argument to which we have directed our attention although we do not in entirety approve any of them.

For the misconduct of counsel for the State in the final argument to the jury we find error resulted in prejudice to the defendant requiring that the judgment be reversed and cause remanded for a new trial.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.