**STATE, Plaintiff-Appellee, v. PIERCE, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3793.   Decided July 9, 1945.

Ralph J. Bartlett, Prosecuting Atty., Columbus, Forrest F. Smith, Asst. Prosecuting Atty., Columbus, for plaintiff-appellee.

Fred W. Postle, Columbus, and Lee H. Kramer, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, P. J.

This is an appeal from the conviction of defendant of murder in the first degree on two counts of an indictment and sentence to the death penalty. The first count charged the defendant with the deliberate and premeditated murder of his wife, Lavina Pierce; the second count, with the murder of his son, Homer Pierce.

Eight errors are assigned, two only of which are discussed in the briefs of the parties, the first, misconduct of the Prosecuting Attorney in his closing argument to the jury; the second, prejudicial error in the general charge of the Court to the jury.

The defense was predicated on a general plea of not guilty with a special defense of "not guilty by reason of insanity". The Court, at the request of counsel for the defendant, appointed two alienists who made an examination of the defendant, but were called by the plaintiff and testified only in rebuttal.

The proof on behalf of the defendant tending to establish his insanity came from his own testimony and from a number of lay witnesses including members of his own family who

detailed eccentricities, peculiarities and afflictions of the defendant, mental and physical, which they had observed and with particularity, the unusual conduct of the defendant on the day of the killing and preceding that event. The alienists, Doctors Tarbell and Harding, agreed that the defendant was a psychopathic personality but not psychotic and not insane at the time of the killing.

The language made the subject of the first assignment of error is found in the closing argument of the Prosecuting Attorney:

"Now on this insanity plea, let me say this to you, if you would be inveigled into freeing this man on the ground of insanity, not guilty by reason of insanity, and they sent him to Lima, why, he would be back here before you got settled in your home after a week down here in the Court House. You know they don't keep sane people in an asylum. That is not what it is for. Do you think after hearing that man here for a couple days on the witness stand and the way he exercised his mind and told you about dates and personalities and so forth, why, that man planned his own defense, he is that bright, he has got that much reasoning power, he has got that much brains, he is that sane that he planned this himself, he planned his story, it is a day after day planning, the story he told here on this stand. Do you think after they took him to Lima that they would keep that man in an insane asylum? Insane asylums aren't places where they keep people that are sane and able to use their reasoning power, and plan, even though it be plan to save their hide."

Counsel for defendant interposed an objection to any argument about what would happen at Lima and defendant's release to which the Prosecutor said:

"Your Honor, I think I have a right to do it in the first place, but from that table over there, they asked these witnesses, they said, 'You realize if you find him insane he wouldn't be released'. That was on voir dire."

Objection was again noted to the argument which was overruled and exception noted thereto.

It is the claim of the appellant that the argument was improper in that it was but an unsupported personal statement and personal beliefs of the Prosecutor and manifestly prejudicial in its tendency. We are cited to;

Bowers on Judicial Discretion of Trial Courts, Sec. 525;
Smith v Great Northern Railway Co., 158 N. W. 46, 47;
42 Am. Jur., 255, et seq.;
12 O. Jur., Sec. 504, p 517 et seq. and Sec. 517 p 531;
39 O. Jur., Sec. 108, page 684;
Hayes v Smith, 62 Oh St 161;
State v Thayer, 124 Oh St 1;
Turner v State, 21 Abs 276;
Deutsch v State, 46 Oh Ap 223 and other cases there cited.
Cleveland Railway Co. v Crocks, 130 Oh St 255.

To epitomize the argument, it consists of observations
of counsel, the purpose of which is to establish from the evi-
dence his thesis that the defendant was not insane at the
time of the killing, or at the time of the trial, and that the
result of an acquittal because of insanity would be that not
long after his commitment to the institution for the insane
at Lima he would be released because he was a sane person.
The language of the argument does not require the con-
clusion that it was based only upon personal belief apart from
the evidence. It drew inferentially upon the background of the
evidence adduced by the State from the alienists and from
the history of the case as developed, the statements of the
defendant at the time of the killing and his testimony at the
trial. Inquiry was made on voir dire of two prospective jurors
and it is stated, in the brief of the State, in the presence of all
the jurors who afterwards qualified and were accepted:

"Q. You understand of course, that in the event of a
verdict of not guilty by reason of insanity that that would
not mean the release of the defendant, do you not?"

It is urged by counsel for the State that this inquiry
opened up the subject which was discussed in the closing
argument and removes any prejudicial character of the
language employed, if any attended. The inquiry does not go
as far in implication as the argument of the Prosecutor as
to the incarceration of the defendant if he were found to be
insane. However, we are of opinion that the Prosecuting
Attorney did not go beyond the rule which permits obser-
vation to be made to elucidate argument to matters of
common knowledge. It is obvious that every adult knows
that insane persons are put in asylums, and it was invad-
ing no prohibited sphere for the Prosecutor to assume that if
the jury declared the defendant to be not guilty because of
insanity, that he would not be released but incarcerated in
some institution commonly known as an asylum. The Prose-

cutor was a little more explicit in defining the asylum as the Lima Hospital.

But, if it could be said that the argument was improper, we are satisfied that it was not prejudicial to the defendant or such as to incite passion and prejudice against him.

We do not discuss specifically the cases and authorities cited but we have either read them or are entirely familiar with them, and it may be safely said that all may be distinguished in controlling facts from the situation presented here.

The second error assigned may be divided into two parts, both of which are directed to the general charge of the Court. The first, to that portion of the charge which was given to the jury at the request of the Prosecutor as the Court was concluding the general instructions. It was presented in this language:

"The Prosecutor has called to the Court's attention another matter which the Court will instruct you on, members of the jury, at this time.

"It is a general principle of law, members of the jury, that acute alcoholism or mental incapacity induced by voluntary intoxication existing temporarily at the time of the homicide, is generally no excuse or justification for the crime.

"Further, it is also a general principle, members of the jury, that drunkenness is not insanity or does not answer to what is termed an unsound mind unless the derangement which it causes becomes fixed and continues by the drunkenness being habitual or by chronic alcoholism and thereby rendering the party incapable of distingushing between right and wrong, the same as insanity produced by any other cause."

Two specific objections are urged to this charge: first, that the Court in the second paragraph of the above quoted matter employed the term "for the crime", thereby implying that a crime had been committed, when, as a matter of fact, that was an issue for determination by the jury; and, second, that the charge was prejudicially erroneous in that it did not inform the jury that they could consider the effect of intoxication of the defendant, if they found him to be intoxicated, upon the elements of intent to commit murder in the second degree and the deliberation and premeditation essential to first degree murder.

A reading of the charge in its entirety is convincing that the inadvertence in the language of the Court in the use of the term "for the crime" could not have mislead the jury into

believing that the right to determine the issues raised by the defendant's general and special pleas was taken away from it in any particular.

Upon the second specific objection it is conceded by counsel for the defendant that the Court had in the earlier parts of his charge properly delineated the law as related to the defense of insanity.

We agree with counsel that intoxication in its temporary or permanent effect may reflect on the ability of the defendant to form the purpose or specific intent, or to deliberate and premeditate the act of killing. The following cases so hold:

**State v Vargo, 116 Oh St 495;**
**Long v State, 109 Oh St 77;**
**Cline v State, 43 Oh St 332;**
**Rucker v State, 119 Oh St 189.**

The trial judge in employing the language of Rucker v State, supra, framed the charge with special reference to the defense of "not guilty because of insanity". The syllabi of this case are particularly applicable to the facts developed here and if there was any failure on the part of the Court to more completely charge on any aspect of intoxication, it was an error of omission and not of commission. **State v Schaefer, 96 Oh St 215; State v Driscoll, 106 Oh St 33; Scott v State, 107 Oh St 475.** Counsel for the defendant made no request of the Court for an elucidation of the charge in the particulars in which it is now challenged.

A very close reading of this record raises the query why the Prosecutor made any request of the Court to charge on the subject of intoxication as affecting the state of mind of the defendant at the time of the killing. At no place was it suggested by counsel as a defense. It may be that the State felt the jury might conclude, without proper support from the record, that the defendant was drunk when he killed his wife and son. At least one of the doctors suggested that the defendant may have been drunk at the time but this conclusion must have been reached from something he learned independent of the record. The defendant does not assert that he was intoxicated, his son stated to the Prosecutor that the father was not drunk when he saw him a few hours before the killing and, in fact, had not been intoxicated for thirty days prior thereto. The amount of liquor that it appears defendant drank on the day of the killings, all of which was beer, is not sufficient to require the conclusion that he was intoxicated. No one states that it would have made him drunk and no hypothetical question was put to

any witness to elicit the fact. As early as the case of **Davis v State, 25 Oh St 369,** the Court had under consideration a charge given by the trial judge respecting drunkenness as a defense. The gist of this opinion is that if drunkenness is asserted as a defense, it must be proven by the defendant.

We cannot say that the charge as given was prejudicially erroneous.

The final error assigned relates to the general charge as follows:

"Now, the question of recommendation of mercy, if you find the defendant guilty of murder in the first degree, is a matter the law leaves entirely with you and I give you this in charge; you may recommend, if in your judgment you think you are justified in doing so. It is for you to say whether all the facts in the case warrant you in making or not making such recommendation, but you are not limited or circumscribed in any respect. The law prescribed no rule for the exercise of your discretion. It is a matter entirely with you."

This language was a part of the general charge as originally given to the jury. Some eight hours later the jury requested the Court "for reading on the clause concerning mercy", whereupon the Court called the jury and gave the following additional instructions:

"Now, members of the jury, if after a fair, careful and impartial consideration of all the evidence in this case, you find that the defendant has been established guilty of murder in the first degree, then you will have one further duty to perform and that is, you will determine whether or not you will extend or withhold mercy. I say if you find the defendant guilty of murder in the first degree on this indictment, it then becomes your duty to determine this important question.

"In that connection, whether you recommend or withhold mercy is a matter solely within your discretion, calling for the exercise of your very best and most profound judgment, not motivated by considerations of sympathy or as a means of escaping a hard or disagreeable duty, but must be considered by you in the light of all the circumstances of the case with respect to the evidence submitted to you and the other circumstances surrounding this defendant. You should determine whether or not in your discretion mercy should be granted from a consideration of the evidence, the character of the crime and the attending circumstances.

"With this additional instruction you will now retire to your jury room for further deliberation."

A general exception was noted to the additional instructions by counsel for defendant.

The language of the charge is identical with that which was under consideration by our Supreme Court in **State v Caldwell, 135 Oh St 424,** and there approved. Obviously, if the correctness of this pronouncement is to be tested and overcome, it must be done in the Supreme Court and not here.

The verdict and judgment are not challenged in this Court as being against the weight of the evidence nor contrary thereto. The record discloses that the defendant had a fair trial upon the issues raised by his defenses and was ably represented by counsel. No witness testified that he was legally insane.

The strongest support to establish a disordered mind comes from the lips of the defendant himself. The only purpose served by much of the protracted testimony offered by him is that it tended to establish a disordered mind, made worse and irresponsible by the unusual series of untoward events to which he was subjected culminating in the trouble with his wife and their separation. It taxes one's credulity greatly to believe that all the experiences which defendant narrated on the stand occurred in one man's lifetime. The stories that he tells are bizarre and, to say the least doubtful in many particulars. They were aptly characterized by some of the witnesses as "tall stories".

If the events that defendant narrates actually occurred they are most unusual. If not, they can only be explained upon one of two theories, either, they are deliberate falsehoods conjured up for the purpose of creating the impression of a disordered mind, or the normal reaction of an abnormal mind. The experts agreed that the defendant's mind was not normal but they also agreed that he had sufficient mentality to realize and appreciate the nature of the atrocious act which he committed. The judge and jury in the situation presented had a difficult duty to perform. In so far as we can determine, they met this obligation without any prejudice to the defendant's rights.

The judgment will be affirmed.

GEIGER and MILLER, JJ., concur.