STATE, PLAINTIFF, *v.* BOOTH, DEFENDANT.

Common Pleas Court, Tuscarawas County.

No. 9710.   Decided August 8, 1962.

34

*Mr. Harlan Spies*, prosecuting attorney, for the state.
*Mr. Robert R. Pietro*, for defendant.

LAMNECK, J. The indictment in this case charged the defendant, Iona Ervin Booth, on or about the 24th day of May 1962, at the county of Tuscarawas, with unlawfully killing Blanche K. Ervin, contrary to and in violation of Section 2901.06, Revised Code.

Upon the application of the defendant, the Court ordered the Prosecuting Attorney to furnish the defendant with a Bill of particulars setting up specifically the nature of the offense charged. The Prosecuting Attorney complied with this request, and furnished the defendant with a Bill of Particulars which reads as follows:

"Now comes the Prosecuting Attorney of Tuscarawas County, Ohio, and sets forth a Bill of Particulars as requested in the above entitled case as follows:

"That the Defendant, Iona Ervin Booth, and mother of the deceased, Blanche K. Ervin, including but not limited to, failed and neglected to provide her physically and mentally handicapped child under twenty-one years of age, with the necessary or proper care; the necessary or proper food; and failed to avail her daughter of the necessary or proper medical services, thereby causing and allowing the body of her physically and mentally handicapped child to deteriorate and waste away to a state of severe emaciation, and ultimately resulting in death caused by malnutrition due to starvation."

Upon trial the jury found the defendant guilty as charged.

The matter is now before the court on a motion for a new trial for the following reasons:

1. Irregularities in the proceedings of the Prosecuting Attorney.

2. Admittance of certain State exhibits into evidence.

3. Refusing defendant the opportunity to call a certain witness.

4. Error in the Court's charge to the jury.

The defendant is charged with committing the crime of Manslaughter in the First Degree. Manslaughter in the First Degree is the unlawful killing of another, without malice, and *either voluntary*, upon a sudden quarrel, or unintentional, while the slayer is in the commission of some unlawful act. See *State* v. *McDaniel*, 103 Ohio App., 163, 144 N. E. (2d), 683.

The unlawful act complained of in this case is that incorporated in Section 3113.01, Revised Code, which in so far as it relates to this case provides that no parent charged with the maintenance of a physically or mentally handicapped child under twenty-one years of age shall fail to provide such child with the necessary or proper food and care.

Under the first ground of the motion for a new trial, the defendant charges the prosecuting attorney with misconduct to her prejudice in asking her on cross-examination, (1) whether or not she was jealous of the deceased because the deceased's step father had shown a kindly attitude to the deceased, and (2) whether or not she had life insurance on the deceased.

She denied any jealousy on her part but admitted that she had life insurance on the deceased.

Where a defendant in a criminal case takes the witness stand in his own behalf, his testimony is weighed by the same measure and standards as the testimony of any other witness. See 58 American Jurisprudence, 372, Section 685.

His veracity and credibility may be tested by cross-examination as other witnesses may be tested. See 58 American Jurisprudence, 373, Section 687; *Sabo* v. *State*, 119 Ohio St., 231, 163 N. E., 28.

In the instant case the defendant is charged with the crime of manslaughter in the Fire Degree in the killing of another in an unlawful manner. A purpose to kill is not a necessary element of this offense, though the purpose to kill may exist. See *Ervin* v. *State*, 29 Ohio St., 186.

It was therefore proper for the prosecutor in his cross-examination of the defendant to ask any question not wholly remote from the question of innocence or guilt of the defendant that would tend to test her credibility as a witness, and especially to show intent even though intent is not a necessary element of the crime charged.

Under the second ground of the motion for a new trial, the defendant contends that it was improper for the court to admit into evidence State's Exhibit No. 1. The decedent had been a helpless epileptic for sometime prior to her death according to substantial evidence offered by the State. She was found dead in bed in an upstairs bed room of the defendant's home in Newcomerstown, Ohio, on May 24, 1962, in an extremely emaciated condition with bed sores over a large part of her body. Death had occurred long enough according to medical testimony that maggots had hatched and were working on parts of her body. The coroner found the cause of death to be "starvation, malnutrition."

When the body was found, the Chief of Police of Newcomerstown was called and he proceeded to make an investigation. On May 25, 1962, in pursuance to his request, the defendant voluntarily walked to the City Hall in Newcomerstown from her home where the Chief asked her a series of questions concerning her family, the condition of and her care of the deceased, the ability of the deceased to care for herself, and other questions pertinent to the deceased and the cause of her death. Some of the

answers were favorable to the accused but some tended to show guilt.

The questions and answers were reduced to writing by the Chief and each page was signed by the accused. The concluding paragraph of the statement reads as follows:

"I have read the statements on this page and on the preceeding 6 pages and they are true to the best of my knowledge. No threats or promises have been made to induce me to make such statements and I am aware that what I have made may be used against me in a court of law. I have been advised that I might consult counsel if I so desire. I am aware that I need not of made these statements if I had so desired not to. I know to whom I gave this statement to and they are in answer to questions asked by two officers who identified themselves as Donald Patterson of the Tusc. Co. Prosecutor's Office and John E. Lawver, Chief of Police of the Newcomerstown Police Department."

The Chief of Police also testified that the defendant voluntarily made the statement without any threat, inducement or promise.

This statement could not be classified strictly as a voluntary written confession. A confession is an acknowledgment of guilt and covers the whole transaction. This statement was not such an acknowledgment. It did contain declarations and admissions of facts pertinent to the issue of guilt or innocence of the accused. It could be called a voluntary written admission.

It is uniformly held that voluntary declarations and admissions of an accused, direct or implied, of a fact or facts pertinent to an issue and tending to show his guilt are competent evidence against him. See 15 Ohio Jurisprudence (2d), Criminal Law, Section 388, page 561; *Morrow* v. *State*, 15 O. C. C. (n. s.), 561; *State* v. *Meier*, 72 Ohio App., 275, 51 N. E. (2d), 237; *Jones* v. *State*, 20 O. C. C. (n. s.), 542; *Curtis* v. *State*, 113 Ohio St., 187, 148 N. E., 834.

The mere fact that an admission is made to a police officer, or that a statement taken by such officer of an accused will be of benefit or advantage to the accused does not exclude its admission. See 15 Ohio Jurisprudence (2d), 572, Section 401.

The Court fully protected the rights of the accused con-

cerning this statement in its general charge to the jury, the pertinent part of which reads as follows:

"The alleged written statement of the defendant in this case cannot be received and considered by you unless it was freely and voluntarily made. This means that the statement must not be obtained by any sort of threat or violence, nor by the exertion of any undue influence. The State, offering the written statement, must prove that it was made freely and voluntarily.

"If any improper inducements are proven, an inference thereupon may be drawn that the statement was involuntary; but the ultimate question for your determination is whether or not such improper inducements did in fact cause the statement to be made, or whether such statement was the free and voluntary act of the accused.

"All the surrounding circumstances, the defendant's strength or weakness of mind, her knowledge, her demeanor, etc. must be looked to by you to determine whether she was affected by the promises or threats, if any, and made the statement as a result of such undue influence, or freely and voluntarily. You should consider separately the circumstances under which the alleged statement was made by the defendant. If you find the statement to be involuntary, you will entirely disregard the statement."

State's Exhibit No. 1 was therefore properly admitted into evidence.

Under the third ground of the motion for new trial, the defendant contends that the court erred in its refusal to permit the defendant to call a certain Newcomerstown police officer as a witness.

At the beginning of the trial the Court made an order for the exclusion of witnesses from the court room.

A police officer of the village of Newcomerstown, working under the Chief of Police was not subpoenaed as a witness and did not know he might be called as a witness. He sat in the court room during a large portion of the time that the trial was in progress. Counsel for the defendant attempted to call him as one of his witnesses near the end of his case. The prosecutor objected and was sustained because the officer, to the

knowledge of the court, had been in the court room and heard a number of witnesses testify.

Thereupon counsel for the defense informed the Court that his purpose in calling the officer was to show that he listened to the testimony of the witnesses for the defense and then would inform the Chief of Police what the testimony was, thereby violating the spirit of the order of the court respecting the exclusion of the witnesses from the court room. The request of the defense to call this officer as a witness for this purpose was again refused.

In support of his contention that this refusal prejudiced the defendant's case, defense counsel cited to the court the case of *State* v. *Ross*, 15 Ohio Dec. Reprint, 238, wherein it was held that "if witnesses for the State, ordered to remain out of hearing, listen at the door, and are subsequently called to testify, a new trial will be granted to the accused, unless the court can affirmatively find that they heard nothing, and the prosecuting attorney will be directed to file informations against them." This pronouncement was made by a Court of Common Pleas in 1886, and in an extreme situation.

Assuming that the contention of defense counsel as to these alleged facts is true; that the police officer talked to the Chief of Police after defense witnesses had testified; and that such communications were a violation of the spirit of the court's order concerning exclusion of witnesses from the court room, was such alleged violation prejudicial?

In the instant case, the Chief of Police was the State's second witness, and testified at length. The communications alleged to have been made by the police officer to the Chief of Police occurred after the Chief had testified in chief. The Chief was also called as a rebuttal witness for the State and testified very briefly refuting statements of a defense witness that he had purposely put the room in which the decedent died in disarray.

In Ohio it rests in the sound discretion of the Court whether a witness who remains in the court room in violation of an exclusion order shall afterward be permitted to testify. Permitting a witness who has violated a separation order to testify is not ipso facto an abuse of discretion. See 52 Ohio Jurisprudence (2d), 552, Section 69.

It was held in *Sisti* v. *State*, 2 Ohio Law Abs., 569, that the testimony of a State witness may not be barred simply because, after separation of the witnesses was ordered, he talked to another witness who had already testified.

The court held in that case that while this misconduct on the part of witnesses in disobeying an order of the Court of exclusion might be sufficient to cause at least a reprimand and punishment of the parties so disobeying, it was not sufficient to deprive the State of the witnesses' testimony.

Likewise it would follow that the State should not be deprived of the testimony of a State witness on rebuttal simply because he talked to a bystander who told him what the testimony of a defense witness was, especially where there is no claim that such conversation was with the consent, connivance, or procurement of the Prosecutor. See 53 American Jurisprudence, 48, Section 33.

To justify an interference with the reception of such evidence, the case must be an extreme one. In *Laughlin* v. *State*, 18 Ohio, 99, the Supreme Court of Ohio held that "where the witnesses in a cause have been ordered by the court, at the request of a party, to withdraw, and one of them remains, in violation of the order, and hears the testimony of other witnesses, it rests in the sound discretion of the court whether he shall afterwards be permitted to testify.

If the Chief's alleged conversation with the officer concerning the testimony of the other witnesses was a violation of the spirit of the separation order, that is a matter which could be presented to the judge in a proceeding in contempt. Whether a witness has violated an order of separation and thus disqualifies himself as a witness is a matter for the Court to determine and is not a matter to be presented to a jury in the trial.

The Court is of the opinion that the defendant was not prejudiced in any way by denying the defense the right to call the police officer as a witness before the jury to prove that the spirit of the order of the Court concerning separation of witnesses had been violated or in permitting the Chief of Police to testify on rebuttal under the circumstances.

The defendant claims that the court erred in its charge to the jury concerning elements to be proven before the defendant could be found guilty.

The charge of the Court concerning the elements to be proven reads as follows:

"Before the defendant can be found guilty of the crime charged in the indictment, the State must establish by the evidence beyond a reasonable doubt each and everyone of the following named elements:

(1) That the alleged crime was committed in Tuscarawas County, Ohio. There is no dispute about that, if a crime was committed.

2. That the alleged offense was committed on or about the 24th day of May, 1962. It is not necessary that the state show absolutely that it was committed upon that date. If the evidence establishes that date, or one near thereto, or a series of days culminating at or near May 24, 1962, that is sufficient.

3. That the deceased is under the age of twenty-one years, to wit of the age of eighteen years, and there is no dispute about that.

4. That the defendant is the mother of said child, and there is no dispute about that.

5. That the deceased was a physically or mentally handicapped child.

6. That the defendant was able to and failed to provide said child with necessary or proper care or food.

7. If the defendant failed to provide said child with the necessary or proper care or food, that such failure was the proximate cause of the death of said child."

Particular exceptions are taken to the words "there is no dispute about that, if a crime was committed" under element one, and the words "and there is no dispute about that" under element three, and the words "and there is no dispute about that" under element four.

Element one refers to venue, element three to the age of the deceased, and element four to the fact that the defendant was the mother of the child.

The state offered substantial evidence on all of these three elements which was not disputed. The defendant in her testimony unequivocally testified that the deceased was 18 years of age, that she was the mother of the child and that she had continuously resided with the deceased in her home in New-

comerstown, Ohio in Tuscarawas County for a number of years before the decedent's death. Under such circumstances how could the defendant be prejudiced by the court informing the jury that there was no dispute about the venue of the crime, if a crime was committed, the age of the deceased at the time of her death, or that the defendant was the mother of the deceased?

It is the duty of the Court to advise the jury as to the issues in a case, and that is exactly what the court did in advising the jury that there was no dispute as to the three elements in question, which with others was necessary to be established before the defendant could be found guilty.

Under Section 2945.83, Revised Code, it is provided under Section (d) that no motion for a new trial shall be granted for "a misdirection of the jury unless the accused was or may have been prejudiced thereby." Even if the court's use of the words "there is no dispute about that" in its charge to the jury in connection with elements one, three and four, was improper, it could not be termed prejudicial because of the unequivocal truth of the statements.

It is also provided under Section 2945.83, Revised Code, that no motion for a new trial shall be granted "unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

The court was very liberal in permitting the accused to present evidence in her defense. It was also strict with the State in its presentation of evidence. It does not appear from the record that the conduct of the Prosecuting Attorney had any bearing on the result of the trial, or that different rulings on the exclusion or admission of questioned evidence set up in the motion for a new trial would have affected the verdict of the jury.

The Court finds no substantial error in the trial of this case. Where a claimed irregularity does not affect a substantial right of the defendant, a verdict will not be set aside. See *State* v. *Wells*, 134 Ohio St., 404, 17 N. E. (2d), 658.

For the foregoing reasons the motion for a new trial is overruled. Exceptions noted.