THE STATE OF OHIO, APPELLEE, *v.* SALMON, APPELLANT.

[Cite as State v. Salmon, 10 Ohio App. 2d 175.]

(No. 27428—Decided May 25, 1967.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. George J. Moscarino,* for appellee.

*Mr. Marshall I. Nurenberg* and *Mr. William E. Mahon,* for appellant.

ARTL, C. J. The defendant was indicted, tried and convicted by verdict of a jury for the crime of murder in the first degree, the jury having recommended mercy. On March 23, 1965, sentence was pronounced, ordering defendant to be imprisoned in the Ohio Penitentiary for life. Motion for new trial filed on March 26, 1965, was overruled by the court on April 12, 1965. Defendant brings this appeal on questions of law.

The assignments of error, seven in number, read as follows:

1. The court erred in entering a judgment of conviction of the crime of first degree murder upon the verdict of the jury.

2. The court erred in overruling defendant's motion for a new trial.

3. The court committed errors of commission and omission in its charge to the jury.

4. The court erred in permitting the prosecution to introduce evidence and exhibits over the objections of the defendant.

5. The court erred in the rejection of evidence and exhibits offered by the defense.

6. The court erred in the conduct of the trial

7. The verdict is manifestly against the weight of the evidence.

The indictment charged defendant with the crime of first degree murder in that "Thomas Salmon, on or about the 25th day of October 1964, at the county aforesaid, unlawfully, purposely and of deliberate and premeditated malice killed Atlas Osborne contrary to the form of the statute * * *."

The defendant concedes that there was never a dispute that Thomas Salmon, defendant, did fire from his .22 caliber rifle within the confines of his home at 2267 West 7th Street, Apartment 1, Cleveland, Cuyahoga County, Ohio, the fatal shot; nor was there any controversy as to the cause of death, it being conceded at the outset to be the result of a single .22 caliber bullet penetrating the brain of the decedent, resulting in his virtually instantaneous death. The factual controversies developed in this case and other facts necessary to an understanding and determination of the claimed errors will be referred to hereinafter.

For the purpose of our opinion, we shall defer a discussion of assignments of error numbers one and two together with number seven until after we have studied the errors claimed to have occurred during the trial. The first such error to be examined will be number three, which reads:

The court committed errors of commission and omission in its charge to the jury.

Specifically, defendant claims that the court erred in its charge on the defense of voluntary intoxication and in its refusal to charge upon anger. From the record it is apparent that defendant had engaged in a great amount of drinking of alcoholic beverages for a long period up to almost a moment before the fatal shooting. His counsel advanced the defense of voluntary intoxication, not as a complete defense to the crime but only for its value as an element to show defendant's inability to premediate and deliberate upon the killing or intent necessary to prove first degree murder and thus obtain the reduction of such charge to a lesser included offense. At no time did the defendant ever interpose the defense of. insanity, nor seek a not guilty verdict by reason of alcoholism or otherwise.

The portion of the charge to which defendant alludes as highly prejudicial is as follows:

"And if you should find by a preponderance of the evidence,

that is the greater weight of the evidence, that the defendant was intoxicated to such an extent *that he was incapable of distinguishing between right and wrong and of knowing what he was doing* or forming an intent, and if he was intoxicated to such extent that he could not deliberate and premeditate, then in that event, the offense would be reduced from murder in the first degree to a lesser offense." (Emphasis ours.)

The matter of voluntary intoxication is discussed in 27 Ohio Jurisprudence 2d 622, *et seq.*, Homicide, Section 80. There we find the following:

"Voluntary drunkenness, although not a justification or excuse for the commission of crime, may be a partial and often a complete defense to a charge of homicide, depending upon what specific intent is required in the particluar crime and whether the defendant was so drunk that his mind was incapable of entertaining such intent. Hence, if he was so intoxicated at the time he killed the deceased that his mind was incapable of deliberation and premeditation, he cannot be guilty of murder in the first degree. Or if drunkenness prevented him from having the intent to kill, the defense is good as against a charge of first or second degree murder."

In view of the court's charge as given referring to the "right and wrong" test, the following comment quoted in the same article set forth above is, we believe, of some significance:

"The drunkenness of an accused who has killed another is not to be classed with insanity unless the derangement which it causes had become fixed and continuous by the drunkenness being habitual, or by chronic alcoholism, thereby rendering the accused incapable of distinguishing between right and wrong, the same as insanity produced by any other cause." *Rucker* v. *State,* 119 Ohio St. 189; *State* v. *Pierce* (App.) 44 Ohio Law Abs. 193.

The cases cited to support this proposition are: *Nichols* v. *State,* 8 Ohio St. 435; *Adams* v. *State,* 29 Ohio St. 412; *Cline* v. *State,* 43 Ohio St. 332, *Long* v. *State,* 109 Ohio St. 77, *Rucker* v. *State,* 119 Ohio St. 189, *State* v. *Vargo,* 116 Ohio St. 495; *State* v. *Pierce* (App.), 44 Ohio Law Abs. 193.

In our study of the problem we find that the charge complained of as erroneously given in our case is patterned quite closely on the charge given in *State* v. *Long,* 109 Ohio St. 77,

*supra,* which was approved by the Supreme Court. From an examination of the opinion in the *Long case, supra,* we note that defense counsel therein contended that the defendant was not claiming intoxication as a defense to the prosecution and that intoxication was only pertinent to the inquiry as showing inability of the accused to meditate and deliberate upon the killing. The trial court imposed upon the defendant the burden of proof which the defense claimed was error. But what is of extreme importance and what definitely distinguishes the *Long case* from the case at bar is the fact that the Supreme Court, upon an analysis of the facts, came to the conclusion that the defendant did in fact urge intoxication as a defense, and discussed the merits of defendant's assignment of error in that context and for the reasons stated in the opinion overruled the claimed error.

Paragraphs two and three of the syllabus in the case of *Rucker* v. *State,* 119 Ohio St. 189, define the proper application of the law with respect to voluntary intoxication. They read:

"2. Acute alcoholism or mental incapacity produced by voluntary intoxication existing temporarily at the time of the homicide is generally no excuse or justification for the crime. Proof of such intoxication, however, is competent and proper for the jury to consider as bearing upon the question of intent and premeditation, in determining whether the accused is guilty of murder in the first degree or some lesser degree of homicide, or to show that no crime was committed. *(Nichols* v. *State,* 8 Ohio St., 435; *Davis* v. *State,* 25 Ohio St., 369; *Cline* v. *State,* 43 Ohio St., 332, 1 N. E., 22, and *Long* v. *State,* 109 Ohio St., 77, 141 N. E.. 691, approved and followed.)

"3. Drunkenness is not insanity, nor does it answer to what is termed an unsound mind, unless the derangement which it causes becomes fixed and continued by the drunkenness being habitual, or by chronic alcoholism, and thereby rendering the party incapable of distinguishing between right and wrong, the same as insanity produced by any other cause."

In the case before us, it is quite clear that neither intoxication nor anger was claimed as a defense. Its only pertinence has to do with the element of premeditation and deliberation. There is nothing in the record herein to indicate habitual drunkenness or chronic alcoholism on the part of the defendant to bring

the case within the purview of insanity as referred to in *Rucker, supra.*

Indicative of what a proper charge on the subject should be is that given in the case of *State* v. *Vargo,* 116 Ohio St. 495. The Supreme Court gave its approval to the charge as given by the trial court. It follows:

"As we have said to you, if you find from the evidence in the case, established by a preponderance of the evidence by the defendant, that by reason of anger or intoxication, or both, that the mind of the accused was in such condition that he was incapable of reflection, or deliberation, or premeditation, then he cannot be found guilty of murder in the first degree.

"And if you should find from the evidence, and a preponderance of the evidence, that by reason of his intoxication and anger he was in such condition as to be incapable of forming any intention or design to take the life of the deceased, then he could not be found guilty of murder in the second degree, but would be guilty of manslaughter only."

In the charge given, the court points out at page 508 in its opinion that the language contained in the charge, to wit: "established by a preponderance of the evidence by the defendant," was subject to criticism and stated that "an accurate instruction would, of course, have left the preponderance to be determined by all the evidence." But it determined that the jury could not have been misled by this.

We therefore conclude and hold that it was prejudicial error for the court under the facts and circumstances of this case to include in its charge the necessity for a finding "that he was incapable of distinguishing between right and wrong and of knowing what he was doing."

Another aspect of the assignment of error under consideration is an error of omission wherein it is charged that the court refused upon request to charge upon anger as an affirmative defense to reduce the degree of homicide charged in the indictment. The record discloses that counsel for the defendant requested the court to so charge. The record discloses also that the court stated as its reason for refusal so to do that "the court does not find any evidence of anger."

Suffice it to say that upon a careful examination of the record there is more than ample evidence to support a charge

on the subject of anger as pertinent to the effort of defense counsel to reduce the degree of homicide in the first degree to a lesser offense.

The Supreme Court in the case of *State* v. *Vargo, supra,* in its opinion, at page 504, in discussing the subject of anger, stated:

"Without repetition, it may be stated that anger is in the same category as intoxication in this respect. While anger is a proper element to be proved by the state in establishing malice, inordinate anger of that degree which would render the accused incapable of reflecting or deliberating is not necessary to be shown by the state, but, on the contrary, must be regarded as defensive."

Since the subject of anger is defensive, when the record discloses ample evidence on the subject, the accused was entitled to a charge on the subject and a refusal to so charge constitutes prejudicial error. See, charge quoted above given in the case of *State* v. *Vargo, supra.*

It is claimed further that the court erred prejudicially to the defendant on the law of voluntary confessions.

State's exhibits 10 and 10A and 11 and 11A were received in evidence and it is these statements that form the basis for the complaint under consideration. The constitutional guarantees involved with respect to these statements are reserved for consideration later herein.

State's exhibits 10 and 10A comprise questions put to the accused and his answers thereto, put in writing after the accused was in custody, asked by the police whether he cared to make a statement. His answer was, "No, I don't want to make a statement." In answer to the police inquiry, "Will you answer any questions we will ask you in connection with your arrest?" the accused answered, "Yes." There follows about a page and one-third of questions and answers. It was taken at approximately 6:45 a. m. on October 25, 1964.

State's exhibits 11 and 11A comprise a statement taken from the accused later the same day at approximately 12:10 p. m. Police inquiry in connection with this was, "Do you care to make a statement telling us the truth as to the facts that led to your arrest?" to which the accused answered, "Yes." The statement is typewritten, contains a recitation by accused of ap-

proximately five paragraphs, and is followed by approximately one and one-third pages of questions and answers.

There has never been any dispute that defendant fired the fatal shot. It is admitted in the statements as well as in his court testimony. He has not done more than admit facts from which guilt of murder in the first degree might be inferred. Proof of the circumstances involved, together with his admissions in his statements, may well support a conviction.

The court in its charge in relation to the statements herein charged on the subject of confessions, devoting nine paragraphs to the subject of confessions, using the word "confessions" at least eighteen times. If in fact the statements were truly confessions, we must say that the subject was amply covered.

But statements against interest or declarations against interest are not confessions.

The common connotation of confessions, as well as its legal connotation, is set forth in 15 Ohio Jurisprudence 2d 569, Criminal Law, Section 398, as follows:

"A confession voluntarily made is one of the most satisfactory proofs of guilt, and is tantamount to a conviction."

Further, in the same work, Section 399:

"A confession has been defined as the voluntary admission, declaration, or acknowledgment made to another, by a person who has committed a crime or misdemeanor, of his agency or participation in the crime. It covers the whole transaction and is an acknowledgment of guilt, and is therefore distinguishable from a mere admission which acknowledges, directly or impliedly, only some particular fact or circumstance which tends to prove guilt. A confession is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred."

In the opinion found in the case of *State* v. *Booth,* 185 N. E. 2d 466, the trial judge pointed out:

"A confession is an acknowledgment of guilt and covers the whole transaction. This statement was not such an acknowledgment. It did contain declarations and admissions of facts pertinent to the issue of guilt or innocence of the accused. It could be called a voluntary written admission."

As to the effect of characterizing statements as confes-

sions, we find in 23A Corpus Juris Secundum 594, Criminal Law, Section 1236, the following:

"Referring to Statements as 'Confessions.'

"An instruction which characterizes an admission as a 'confession' is erroneous.

"Inasmuch as admissions, statements or declarations may be but circumstantial evidence of guilt and in no sense confessions, an instruction which characterizes them as 'confessions' is erroneous, * * *." (Cases cited.)

While defendant's "statements," if voluntarily made and otherwise competent would well constitute admissible evidence, which, with other evidence, might ultimately establish that defendant had, in fact, committed a crime, and particularly a crime embraced within the indictment, this is a far cry from denominating such statements, in and of themselves, as "confessions." One of the accepted definitions of confession, i. e. Webster's New World Dictionary, is "an admission of guilt." With reference to persons on trial upon an indictment, it is common knowledge that the public regards a confession as an admission of guilt of the crime charged. In effect, the foregoing charge, therefore, told the jury that if defendant's signed statements, denominated "confessions," (state's exhibits 10 and 11) were "voluntarily made," they could be treated as admissions of guilt. The lay jury, once having reached a conclusion of "voluntarily made," as a finding of fact, could justifiably, under the charge of the court, conclude that defendant had voluntarily admitted his guilt of the crime charged in the indictment.

It is our view and we therefore hold that it was prejudicial error to characterize these exhibits as confessions.

The next assignment of error is that the court erred in the admission of evidence offered by the prosecution over the timely objection by defense. This assignment deals specifically with the admission into evidence of state's exhibits 10, 10A, 11 and 11A. These exhibits as previously discussed herein, are defendant's statements, heretofore discussed as "confessions" and in this branch we are to consider the constitutional rights of the defendant with respect to these statements.

Simply stated, it is the position of the defendant that these exhibits were improperly and erroneously admitted under the

holding of the United States Supreme Court in *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758. Aside from the minutiae detail as to how the police obtained the statements from Salmon, the basic premise underlying defendant's counsel's claim that his constitutional rights were denied him is that he was (1) not advised that he had the right to counsel to aid and assist him before making a statement or answering questions, and (2) that defendant was not at any time before he did the talking advised of his right to remain silent.

The record in this case is clear that the defendant at no time made any request to the police to consult with an attorney.

It is equally clear that at no time was the accused advised of his right to remain silent.

This case was tried after the decision in *Escobedo, supra,* and defense counsel in their briefs argue that under *Escobedo* both constitutional rights were violated. Since this case was tried, the Ohio Supreme Court had occasion to decide the case of *State* v. *Carder,* 9 Ohio St. 2d 1, first published in the January 2, 1967, issue of the Ohio Bar.

In *Carder* the Supreme Court dealt with the identical questions presented for our determination. The determination of *Carder* by the Supreme Court is best expressed in the language of paragraphs two, three and four of the syllabus:

"1. *Johnson* v. *New Jersey,* 16 L. Ed. 2d 882, holds that the decision in *Escobedo* v. *Illinois,* 378 U. S. 478, is applicable only to trials begun after the date of that decision, to wit, June 22, 1964, and that the decision in *Miranda* v. *Arizona,* 384 U. S. 436, applies only to trials begun after the date of that decision, to wit, June 13, 1966.

"2. A case tried after *Escobedo* but prior to *Miranda* is subject only to the specific rules in relation to counsel during in-custody interrogation prescribed by *Escobedo.*

"3. Two elements of the rule in relation to in-custody interrogation prescribed by *Escobedo* are, one, the person being interrogated must request and be denied the right to consult with counsel, and, two, the interrogators must have failed to effectively warn him of his absolute constitutional right to remain silent.

"4. In the present case, which was tried after *Escobedo* but prior to *Miranda,* the accused made no request for counsel

and was informed of his right to remain silent. Thus, his statement which was taken in the absence of counsel but which was otherwise voluntary in nature was properly admitted into evidence.''

Applying these rules of law laid down in *Carder* to the present case, we find that the accused made no request for counsel; hence there was no denial of such right. But unlike the *Carder case* wherein the court held that the accused was informed of his right to remain silent, and having made the statement voluntarily, notwithstanding, the court held the statement admissible, in the case at bar, accused was not informed of his right to remain silent. We must therefor conclude that there is in this case a violation of the constitutional right of the accused and the statements and answers to the questions put by the police as set forth in state's exhibits 10, 10A, 11 and 11A were inadmissible, and that error is prejudicial to the accused.

For the errors hereinabove set forth which we hold were prejudicial to the defendant, the judgment of conviction must be reversed and the cause remanded to the Court of Common Pleas for retrial and further proceedings according to law. We have examined the other assignments of error urged by the defense counsel and overrule them.

*Judgment reversed.*

CORRIGAN and WHITE, JJ., concur.