[Cite as *State v. Moats*, 2016-Ohio-7019.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 14 MO 0006 |
| VS. | ) | |
| | ) | OPINION |
| MARCUS MOATS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
                               Common Pleas of Monroe County, Ohio
                               Case No. 2013 -311

JUDGMENT:                      Affirmed.

APPEARANCES:
For Plaintiff-Appellee         Attorney James Peters
                               Monroe County Prosecutor
                               101 North Main Street, Room 15
                               Woodsfield, Ohio 43793

For Defendant-Appellant        Attorney Carrie Wood
                               Assistant Public Defender
                               250 East Broad Street, Suite 1400
                               Columbus, Ohio 43215

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: September 22, 2016

DeGENARO, J.

{¶1} Defendant-Appellant Marcus Moats appeals his conviction on 46 counts of rape, contending there was insufficient evidence to sustain five convictions, and that his convictions on multiple, identical, and undifferentiated counts of rape violated double jeopardy principles. Because Moats' assignments of error are meritless the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Moats was arrested on July 8, 2013, when his girlfriend unexpectedly returned to the residence they shared with her three children. As she entered the house, she heard footsteps receding down the hall, then discovered Moats naked in bed, and C.H., who was eleven years old, hiding in the bathroom wearing nothing from the waist down. C.H. had previously accused Moats of molesting her, but always retracted her accusations. During a lengthy police interview on that same day, Moats—while awaiting DNA test results for him and C.H.—confessed to engaging in vaginal sex with C.H. on five occasions, oral sex with C.H. on three occasions, and "[m]aybe like [expletive] twice" digitally penetrating C.H.

{¶3} The State later indicted Moats on forty-six counts of rape, distinguishable only by the time frame when the alleged crimes were committed: Counts 1-20, from February 25, 2010 to April 28, 2012; Counts 21-35, from May 1, 2012 to May 30, 2013; Count 36 on July 8, 2013–the day Moats was arrested; and Counts 37-46, from June 1 to July 7, 2013.

{¶4} On August 15, 2013, Moats filed a motion for bill of particulars which was unopposed. Then, on February 4, 2014, Moats filed an omnibus pretrial motion seeking, inter alia, dismissal of the indictment, asserting the rape charges in the indictment were vague and ambiguous. Alternatively Moats made a second request for a bill of particulars. On April 2, 2014, the trial court held the indictment was neither vague nor ambiguous, but nonetheless granted the motions for a bill of particulars.

{¶5} On April 11, 2014, the State filed the bill of particulars, which additionally added the locations of the alleged crimes, as Moats and C.H. lived in three different residences over the relevant time period– Maple Avenue, Moore Ridge Road, and Devon Road, as well as the specific sex act alleged – including vaginal,

anal and oral rape, and digital penetration of C.H.'s vagina.

**{¶6}** After trial proceedings commenced, at a hearing following the completion of voir dire, the trial court granted the state's motion to amend the indictment, that is – to change the date "May 1, 2012" to "April 28, 2012" in Counts 1-20, and to correct a typographical error in count 36 – changing "July 18, 2013" to "July 8, 2013."

**{¶7}** C.H. testified to an ongoing pattern of anal, oral, and vaginal rape beginning when she was eight years old, including the estimated number of times that she was raped at each residence. At the conclusion of the state's case, Moats moved for a judgment of acquittal, arguing C.H. did not recall the alleged crimes with sufficient specificity, and that Moats could not properly defend himself "when the state doesn't even know how many acts occurred, or when and where or under the circumstances." Moats further argued "if the allegations were one count during a period of time, and another count during a second period of time or whatever, that might give [him] a reasonable basis to defend his case." The State responded that this Court's opinions in *Billman* and *Stefka*, infra, require only that the State prove the alleged crimes occurred "at least as many times as that which is alleged in the indictments." The trial court denied the motion for judgment of acquittal.

**{¶8}** Moats was convicted on all counts and sentenced as follows: to concurrent life without parole terms for Counts 1-20; and concurrent 25 years to life terms for Counts 21-46, but consecutively to the sentences imposed for Counts 1-20. Moats was twenty-four years old on the day of sentencing.

### Corpus Delecti

**{¶9}** Moats asserts in his first assignment of error:

The trial court violated Marcus Moats' federal and state constitutional rights to due process and a fair trial by admitting Mr. Moats' statement without independent proof of the corpus delicti of the charged crimes in Counts 45 and 46. Fifth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

**{¶10}** The only evidence of vaginal digital penetration admitted at trial was

Moats' confession and the testimony of Sergeant Abbott regarding the circumstances of Moats' confession. During the police interview, after Moats conceded to five acts of vaginal rape and three acts of oral rape, Sergeant Abbott asked, "Okay. And then how many times did you, you know, when she was giving you a bl*w j*b, you fingered her?" Moats responded, "I don't know, [expletive], I know we didn't do that too much, but . . ." Sergeant Abbott interrupted, "Just maybe every once in a while?" Moats responded, "Yeah. Maybe like [expletive] twice."

{¶11} C.H. did not testify that vaginal digital penetration occurred; she actually denied Moats penetrated her vagina with anything other than his penis. While testifying about vaginal rape at Devon, C.H. was asked, "And what about in, as you say, your front, what things would be put in your front?" C.H. responded, "His private." The prosecutor further inquired, "Did he ever put anything else in the front?" C.H. responded, "No."

{¶12} We must first address the applicable standard of review. Moats did not object on corpus delicti grounds in the trial court contending he was prevented from timely objecting because C.H.'s testimony was taken after Sergeant Abbott. However, Moats should have objected to the admission of his confession at the conclusion of C.H.'s testimony. Moreover, Moats' motion for a judgment of acquittal does not constitute a corpus delicti challenge, and plain error review applies. Where a defendant does not object to the admission of his confession on corpus delicti grounds at trial, he can only proceed with plain error or ineffective assistance of counsel arguments. *State v. Miller*, 7th Dist., Mahoning No. 13MA12, 2014-Ohio-2936, ¶123; *State v. Morgan*, 12th Dist. Clermont No. 2013-03-021, 2014-Ohio-250, ¶14.

{¶13} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The Ohio Supreme Court articulated a three-part test for the finding of plain error:

> First, there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings.

Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. (Citations omitted.)

*Id.*

**{¶14}** Thus, notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶15}** Moats contends that plain error exists as C.H. denied that any vaginal digital penetration occurred. The State counters that C.H.'s testimony regarding ongoing anal, vaginal, and oral rape was sufficient to meet the minimal burden in Ohio. However, the State cited no case law in support of this argument.

**{¶16}** The corpus delicti rule provides that before an out-of-court confession will be admitted, the corpus delicti—the body of the crime: meaning the act and the criminal agency—must be established by evidence outside of the confession. See *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988), citing *State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916). The Ohio Supreme Court recounted the historical origins of the corpus delicti rule and pointed out that, in light of the procedural safeguards protecting the due process rights of criminal defendants in the 70s, the corpus delicti rule was supported by few practical or social-policy considerations. As such, there was little reason to apply the rule with "dogmatic vengeance." *State v. Edwards*, 49 Ohio St.2d 31, 36, 358 N.E.2d 1051 (1976).

**{¶17}** The burden upon the State to provide evidence of the corpus delicti is minimal. *Id.* The State does not need to provide direct and positive proof that a crime was committed, but may rely upon circumstantial evidence in proving the corpus delicti. *Van Hook* at 261. "[T]he standard of proof is not a demanding one." There need only be some evidence outside of the confession that tends to prove some material element of the crime charged but not all elements, and that evidence need not rise to the level of a prima facie case. *Id.* at 261–262. Significantly, opinions from the Ohio Supreme Court suggest that the corpus delicti requirement for confessions is a rule of admissibility. See *Van Hook*, 39 Ohio St.3d at 261; *Edwards*, 49 Ohio St.2d at

**{¶18}** Moats contends that plain error exists here, insofar as C.H. denied that any digital penetration occurred. The State counters that C.H.'s remaining testimony regarding ongoing anal, vaginal, and oral rape was sufficient to meet the minimal burden in Ohio. However, the State cited no case law in support of this argument.

**{¶19}** Rape is defined in R.C. 2907.02, as follows:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶20}** "Sexual conduct" is defined as vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse. R.C. 2907.01(A).

**{¶21}** In *State v. Shannon*, 11th Dist. Lake No. 2002-L-007, 2002-L-008, 2004-Ohio-1669, the defendant was charged with rape by digital penetration, but the victim testified that, although Shannon rubbed her vagina, she did not know whether he penetrated her. The Eleventh District recognized that, standing alone, the victim's testimony was insufficient. Nonetheless, the *Shannon* Court relied upon the victim's testimony—that defendant rubbed her vagina with his hand when she did not have any clothes on—to conclude that "rubbing the vagina" could be the precursor to "penetration" if there is any insertion whatsoever of the fingers. Based upon the statutory language recognizing that even slight penetration constituted a violation of Ohio law, and the "very minimal corroborative evidence" needed to be introduced, the digital penetration conviction was affirmed. *Id.* at ¶53.

**{¶22}** Similarly, in *State v. Schauer* (May 15, 2000), 4th Dist. Pickaway App. No. 99CA17, 2000 WL 670304, the defendant was charged with raping his 15-year-

old daughter by inserting his finger into her vagina. Schauer admitted he told his daughter to remove her clothing, that he had whipped her with a belt, and that he had inserted his finger into her vagina three times. However, at trial, the victim refused to discuss the events that occurred and insisted that she had lied when she said that Schauer inserted his finger into her vagina. Although the Fourth District determined that the victim's statements to a physician were inadmissible, with regard to the defendant's corpus delicti argument, it was immaterial that the victim's statements were not admissible because there was sufficient evidence of the corpus delicti in the record: The victim's sister heard her screaming and called the police; the victim said she was afraid of Schauer and that he made her remove her underpants as he read a sexually explicit letter she had written to her boyfriend. The police told the victim to go to the emergency room after they spoke with her, and further testified that Schauer's and the victim's stories were similar. The physician testified that, after his interview with the victim, he felt prompted to ask her about a pelvic examination. The Fourth District held this evidence satisfied the corpus delecti requirement relative to the rape charge of digital penetration and affirmed.

{¶23} This is our first opportunity to address the merits of a corpus delecti challenge to a rape conviction. We are persuaded by the rationale articulated by our sister districts. The burden on the State is minimal. C.H.'s testimony regarding an ongoing pattern of sexual conduct by Moats establishes some but not all of the material elements of rape by digital penetration. See *Van Hook* at 261-62. (There need only be some evidence outside of the confession that tends to prove some material element of the crime charged (not all elements), and that evidence need not rise to the level of a prima facie case.) Thus, Moats has failed to demonstrate error let alone plain error. Accordingly, Moats' first assignment of error is meritless.

{¶24} For clarity of analysis, we turn next to Moats' third assignment of error:

The trial court violated Marcus Moats' rights to due process and a fair trial when, in the absence of sufficient evidence, it entered a judgment entry convicting Mr. Moats on Counts 27 through 30, 45 and 46. Fifth and Fourteenth Amendments, United States Constitution; Section 16,

Article I of the Ohio Constitution; Crim. R. 52(B).

**{¶25}** Sufficiency of the evidence is a legal test dealing with the adequacy, as opposed to the weight, of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A conviction will not be reversed unless after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998); *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In other words, the evidence is sufficient if, reasonable minds can reach different conclusions as to whether each element has been proven. *Id.* When evaluating the sufficiency of the evidence, circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272–273, 574 N.E.2d 492 (1991).

**{¶26}** With respect to the digital penetration rape convictions in counts 45 and 46, Moats' confession and C.H.'s testimony establishing an ongoing pattern of vaginal, anal and oral rape. When viewed in a light most favorable to the prosecution this constitutes sufficient evidence such that a rational trier of fact could find that the elements of the offenses were proven beyond a reasonable doubt.

**{¶27}** Moats next asserts a sufficiency challenge to his convictions on Counts 27-30, all but one of the oral rape counts, which occured at Moore Ridge. C.H. testified that she performed fellatio "sometimes but not always" at Moore Ridge and that Moats "didn't really do it anymore in [her] mouth, but sometimes he would." However, later in her testimony, C.H. was asked by the prosecutor, "And what about in your mouth at the Moore Ridge?" She responded, "I absolutely don't remember." The prosecutor then asked, "Okay. Would it be one time?" C.H. responded, "No. It would be more than that." The prosecutor followed, "More than one. How about more than ten?" C.H. responded, " Yeah."

**{¶28}** The credibility of witnesses and the weight to be given their testimony is to be resolved by the trier of fact. See *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Moreover, witness credibility is considered in a manifest weight not a sufficiency challenge. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964).

**{¶29}** C.H. testified that she performed fellatio on Moats more than ten times. When viewed in a light most favorable to the prosecution this constitutes sufficient evidence such that a rational trier of fact could find that the elements of the offenses were proven beyond a reasonable doubt. Accordingly, Moats's third assignment of error is meritless.

### Multiple Count Indictment—Identical, Undifferentiated Counts

**{¶30}** Moats asserts in his second and final of three assignments of error:

> The trial court erred by conviction Marcus Moats based upon multiple, identical, and undifferentiated counts of a single offense, denying him due process of law and violating the Double Jeopardy Clause. Fifth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

**{¶31}** In an omnibus pre-trial motion Moats sought dismissal of the indictment on the grounds that it was vague and ambiguous, and did not set forth with sufficient specificity "when or where said alleged criminal conduct occurred or the state of mind required in a manner sufficient to permit defendant to prepare an adequate defense. In the alternative, Moats moved for a bill of particulars. This motion was Moats' second request for a bill of particulars as a prior motion was still pending at the time. The trial court found that the indictment was neither vague nor ambiguous, but nonetheless granted the motions.

**{¶32}** The following chart contains the allegations, as amended by the bill of particulars, as well as C.H.'s testimony regarding the criminal conduct alleged:

| Counts | Date | Location | Conduct Alleged (including | C.H.'s testimony |
|---|---|---|---|---|
| 1-10 | February 2010 through April 2012 | Maple | Defendant did insert his penis into C.H.'s anus on at least 10 separate occasions, all of which occurred on separate days; C.H. was less than 10 years old. | "over 100 times," "whenever he got the chance," and "almost every day." "[p]robably forty-five to fifty times." |
| 11-20 | February 2010 through April 2012 | Maple | Defendant did cause C.H. to perform fellatio on him by inserting his penis into C.H.'s mouth on at least ten (10) separate occasions, all of which were on separate days; C.H. was less than 10 years old. | "Probably a little bit over 45 [times]." "probably somewhere in the twenties or thirties range." |

| Counts | Date | Location | Conduct Alleged (including Bill of Particulars) | C.H.'s testimony |
|---|---|---|---|---|
| 21-25 | May 2012 through May 2013 | Moore Ridge | Defendant did insert his penis into C.H.'s anus on at least 5 separate occasions, all of which occurred on separate days; C.H. was less than 10 years old. | "sometimes but not always." it "still happened" but C.H. could not estimate the number of times. <br><br> "didn't really happen that often. It only happened I'd say 21 times. Somewhere around there." <br><br> "A: Like he would, at the time that we were living [on Moore Ridge], he'd just in the front, and not like in the back end and mouth." |

| Counts | Date | Location | Conduct Alleged (including Bill of Particulars) | C.H.'s testimony |
|---|---|---|---|---|
| 26-30 | May 2012 through May 2013 | Moore Ridge | Defendant did cause C.H. to perform fellatio on him by inserting his penis into C.H.'s mouth on at least ten (10) separate occasions, all of which were on separate days; C.H. was less than 10 years old. | "sometimes but not always."; "didn't really do it anymore in my mouth, but sometimes he would." <br><br> "Q: Okay. And what about your mouth at the Moore Ridge?   A: I absolutely don't remember. Q: Okay. Would it be one time? A: No. It would be more than that. Q: More than one. How about more than ten? A: Yeah." |

| Counts | Date | Location | Conduct Alleged (including Bill of Particulars) | C.H.'s testimony |
|---|---|---|---|---|
| 31-35 | May 2012 through May 2013 | Moore Ridge | Defendant did insert his penis into C.H.'s vagina on at least five (5) separate occasions, all of which were on separate days; C.H. was less than 10 years old. | "like about every day after he came home from school." Tr. II at 188, 198.. C.H. agreed that it happened more than 5 times when asked. |
| 37-41 | June 2013 through July 2013 | Devon | Defendant did insert his penis into C.H.'s vagina on at least five (5) separate occasions (no allegation of separate days); C.H. was more than 10 but less than 13 years old. | "about every day," "probably in the thirties range, somewhere in there." |
| 42-44 | June 2013 through July 2013 | Devon | Defendant did cause C.H. to perform fellatio on him by inserting his penis into C.H.'s mouth on at least 3 separate occasions (no allegation of separate days); C.H. was more than 10 but less than 13 years old. | Sexual conduct occurred "just in [her] front and in her mouth."<br><br>"Q: And what about in your mouth?"<br><br>"A: It didn't really happen that often, so probably five to ten times." |

| Counts | Date | Location | Conduct Alleged (including Bill of Particulars) | C.H.'s testimony |
|---|---|---|---|---|
| 45-46 | June 2013 through July 2013 | Devon | Defendant did insert his fingers into C.H.'s vagina and digitally penetrate her on at least 2 separate occasions (no allegation of separate days); C.H. was more than 10 but less than 13 years old. | "Q: And what about in, as you say your front, what things would be put in your front? A: His private. Q: Okay: Did he ever put anything else in the front? A: No." "Q: What parts of his body penetrated yours? A: Like, his front privates. Q: His front privates. Would that be his A: Yes." |

{¶33} Moats challenges his convictions in Counts 2-10, 12- 20, 22-25, 27-30, 32-35, 38-41, 43-44, and 46, arguing the factual bases these multiple, identical and undifferentiated counts of a single offense were not distinguished in the indictment, bill or particulars, or through trial testimony.

{¶34} An individual accused of a felony in Ohio is "entitled to an indictment setting forth the 'nature and cause of the accusation' pursuant to Section 10, Article I of the Ohio Constitution." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985). The General Assembly has defined a sufficient indictment as:

> (A)* * * entitled in a court having authority to receive it, though the name of the court is not stated;  * * * that it was found by a grand jury of the county in which the court was held, * * *
>
> (B) That the defendant is named, * * *
>
> (C) That an offense was committed at some place within the jurisdiction of the court, * * *
>
> (D) That the offense was committed at some time prior to the time of finding of the indictment * * *

R.C. 2941.03.

{¶35} R.C. 2941.04 through R.C.2941.06 allow multiple offenses to be charged in a single indictment and govern the form of the statement charging the offense and the form of the indictment. Crim.R. 7, which is otherwise substantively identical to the controlling statutes, also requires the indictment to include the Revised Code section number of the statutory violation charged.

{¶36} The purpose of a criminal indictment is twofold; to afford the accused with "adequate notice and an opportunity to defend" by "compelling the government to aver all material facts constituting the essential elements of an offense" and also to "protect himself from any future prosecutions for the same offense." *Sellards* at 170. Our review of the indictment here reveals that it meets the statutory and rule requirements as set forth above.

{¶37} Moreover, indictments dealing with sexual offenses against children do

not need to specify the exact date of the alleged abuse if the State establishes that the offense was committed within the time frame alleged. See *State v. Billman*, 7th Dist. Nos. 12MO3, 12MO5, 2013-Ohio-5774, ¶ 30; *State v.Yaacov*, 8th Dist. No. 86674, 2006–Ohio–5321, ¶ 17; *State v. Gus*, 8th Dist. No. 85591, 2005–Ohio–6717. This is because the specific date and time of the offense are not elements of the crime charged. *Billman* at ¶ 30, citing *Gus* at ¶ 6. Further, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period. *Billman* at ¶ 30, citing *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502, (2d Dist.) (1994). "The problem is compounded" where, as here, "the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." *Billman* at ¶ 30, citing *State v. Robinette*, 5th Dist. No. CA–652, 1987 WL 7153, *3 (Feb. 27, 1987). Thus, "[a]n allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." *Id.*

**{¶38}** An exception to this general rule is when the failure to allege a specific date "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified." (Internal citations omitted.) *Billman*, supra, at ¶ 30, citing *Yacov at ¶ 18.* However, Moats has not identified any such defense that was foreclosed.

**{¶39}** Turning next to the bill of particulars, it need not provide specific dates and times where date and time is not an element of the offense charged. *State v. Clemons*, 7th Dist. No. 10 BE 7, 2011–Ohio–1177, ¶ 37; R.C. 2941.03(E). The Ohio Supreme Court has recognized that the limited purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense," but not "to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Sellards*, supra, at 171. Thus, a bill of particulars need not list a specific date and time, because this information only describes when certain conduct may have occurred and does not describe the conduct itself, which is the proper subject of the bill. *Id.*

{¶40} Having concluded that the indictment and the bill of particulars in this case satisfy the requirements of Ohio law, we must next consider the testimony offered at trial in order to determine whether a constitutional violation has occurred.

{¶41} In *State v. Stefka*, 7th Dist. No. 10 MO 7, 2012–Ohio–3004, 973 N.E.2d 786, this Court upheld fourteen convictions for rape and thirteen convictions for gross sexual imposition where the indictment distinguished between the various counts, the bill of particulars provided additional distinguishing details, and the evidence presented at trial tended to prove that there were more instances of the offenses than charged in the indictment. *Stefka*, at ¶ 49. We reached the same conclusion in *Billman*, supra, where the victim testified that nineteen separate incidents of gross sexual imposition occurred, and Billman was only indicted and convicted of six counts of that crime. "[Billman], much like the defendant in *Stefka* was charged by a valid grand jury indictment and convicted on fewer than half of the incidents described in testimony." *Billman* at ¶36, citing *Stefka*, at ¶ 49. Finally, in *State v. Garrett*, 7th Dist. 08 BE 32, 2010–Ohio–1550, ¶ 47, affirming the validity of a multi-count indictment, we reasoned that a defendant who commits multiple crimes against the children placed in his care should not be protected from prosecution because he committed multiple instances of the same crime in the same manner.

{¶42} Here, C.H. testified that Moats committed anal rape forty to fifty times at Maple, but Moats was only indicted and convicted of ten counts of anal rape occurring at the Maple residence. C.H. testified that Moats forced her to perform fellatio over forty-five times at the Maple residence, but Moats was only indicted and convicted of ten counts of oral rape on Maple. Moats was indicted and convicted of five counts of anal rape at Moore Ridge, although C.H. testified that it occurred somewhere around twenty-one times there. Moats was indicted and convicted of five counts of oral rape on Moore Ridge, although C.H. testified that it occurred more than ten times there. C.H. testified that Moats committed vaginal rape about every day that she came home from school while they lived on Moore Ridge, and that it happened more than five times; but Moats was indicted and convicted of five counts of vaginal rape on Moore Ridge. At Devon, C.H. testified that vaginal rape occurred about every

day, approximately thirty times, at the Devon residence, but Moats was indicted and convicted of five counts of vaginal rape at Devon. C.H. further testified that Moats forced her to perform fellatio five to ten times on Devon, but Moats was only convicted of three counts of oral rape on Devon. Finally, Moats confessed to twice digitally penetrating C.H.'s vagina, and he was convicted of two counts of that crime.

**{¶43}** Moats cites *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), as well as opinions from other Ohio appellate courts relying on *Valentine*, for the proposition that a carbon copy indictment—one that charges numerous, identically worded charges—violates due process and double jeopardy. In *Valentine*, the defendant was charged with 20 identically-worded counts of child rape and 20 identically-worded counts of felonious sexual penetration of a child. No attempt was made to differentiate any of the counts, either in the bill of particulars or at trial. At trial, the child victim was able to testify to "about twenty" occasions of forced fellatio and "about fifteen" instances of vaginal penetration. No other evidence as to the number of instances was presented. All of the charges in *Valentine* were based on the same time frame of abuse. The jury convicted Valentine of all 40 counts. *Id.* at 629.

**{¶44}** Moats' reliance on *Valentine* and its progeny is misplaced for several reasons. First, Ohio state courts are not bound by the *Valentine* decision. *State v. Clemons*, 7th Dist. No. 10 BE 7, 2011-Ohio-1177, 2011 WL 861847, ¶ 8, fn. 2. Second, as noted in *Lawwill v. Pineda*, N.D.Ohio No. 1:08 CV 2840, 2011 WL 1882456 (May 17, 2011), the United States Supreme Court has invalidated the reasoning behind one of the major grounds for the *Valentine* decision. *Id.* at *5, citing *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010). The *Lawmill* Court explained:

> *Valentine* relied primarily on *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), and applied the three criteria for the sufficiency of an indictment established in that case. Although the *Valentine* court recognized, as is discussed in more detail below, that the federal right to a grand jury has never been found to be incorporated

against the states, it cited several United States Circuit Court cases that have found that the same due process requirements set forth in *Russell* should be applied to state criminal charges. Following the decision in *Valentine*, however, the Supreme Court has clarified that any reliance on a circuit court decision, including that Circuit's own precedent, when determining what is "clearly established" federal law is error under the AEDPA standard [that is, the Antiterrorism and Effective Death Penalty Act of 1996, which altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus].

*Lawmill* at *2.

**{¶45}** Second, in *Stefka*, this Court recognized that the Sixth Circuit has not relied on or even cited its own holding in *Valentine* since *Renico* was decided but for *U.S. v. Madison*, 226 Fed.Appx. 535 (2007), which involved a federal indictment for tax evasion and other related crimes. Finally, this case, like *Stefka* and *Billman*, is factually distinguishable from *Valentine* in three major respects: the indictment separated the counts by time; the bill of particulars provided additional details about the crimes, including differentiating by location; and finally, the evidence presented at trial demonstrated there were more instances of the crimes than were charged, not less. See also *Garrett*, supra, similarly distinguishing *Valentine*.

**{¶46}** For all these reasons, Moats' second assignment of error is meritless.

**Conclusion**

**{¶47}** The evidence of Moats' ongoing pattern of anal, oral, and vaginal rape in this case is sufficient to fulfill the minimal evidentiary requirement necessary to satisfy the corpus delecti rule; consequently, this challenge fails, and Moats' confession was admissible. With respect to Moats' challenge to his digital penetration and oral rape convictions tied to the Moore residence, Moats' confession and the additional evidence of the ongoing pattern of rape generally, as well as C.H.'s testimony that she was forced to perform fellatio more than ten times on Moore is sufficient evidence to support those convictions. Finally, Moats' indictment

conformed with Ohio law, he received a bill of particulars specifying the type of conduct he was charged with and testimony at trial demonstrate no due process or double jeopardy violations occurred.

{¶48} Accordingly, all of Moats' assignments of error are meritless, and the judgment of the trial court is affirmed.

Donofrio, P. J., concurs.

Waite, J., concurs.