[Cite as *State v. Klosterman*, 2022-Ohio-4596.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-210442 |
| | | C-210443 |
| Plaintiff-Appellee, | : | C-210444 |
| | | TRIAL NOS. 20CRB-17905 |
| vs. | : | 20CRB-19488 |
| | | 20CRB-21168 |
| JOHN KLOSTERMAN, | : | |
| Defendant-Appellant. | : | *O P I N I O N.* |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: December 21, 2022

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Susan M. Zurface*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters,* Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

**{¶1}** Defendant-appellant John Klosterman appeals his convictions for menacing by stalking and two counts of violating a protection order. For the reasons that follow, we affirm the judgments of the trial court.

## Background

**{¶2}** Klosterman owned several properties on the west side of Cincinnati, and he hired a management company to help maintain the properties. Some of Klosterman's properties were eventually declared nuisances by the city, and the city moved to foreclose on the properties to recover on its judgment. In February 2020, the properties were placed into receivership, and, at Klosterman's request, the same management company continued to oversee the properties during the receivership. Klosterman continued to communicate with the property-management employees, including Angel Strunk, who happened to be one of Klosterman's tenants and a former employee of Klosterman.

**{¶3}** Klosterman repeatedly requested information about the receivership from Strunk. Klosterman approached Strunk at the management company's office daily when Strunk was alone. Klosterman also approached Strunk about the receivership at her home when Klosterman collected Strunk's monthly rent. Strunk reported Klosterman's behavior to her supervisor, who confronted Klosterman, and Klosterman appeared to back off.

**{¶4}** In mid-September 2020, Strunk received a phone call from the office manager of an advertising firm where Strunk had worked prior to working for Klosterman. The officer manager told Strunk she had received a phone call from Klosterman, who claimed that he worked for the Hamilton County Department of Job

and Family Services. Klosterman told the manager that Strunk had been receiving unemployment compensation on the company's "dime." When the office manager investigated the situation, she realized that Klosterman was not telling the truth, and that Klosterman was in fact Strunk's landlord. The office manager notified Strunk of Klosterman's call, and Strunk believed that Klosterman was targeting her. Strunk called Klosterman and left him a voicemail telling him to leave her alone.

{¶5} The following morning, Strunk left her house and walked toward her car, and she saw Klosterman standing across the street next to his parked truck. Strunk got into her vehicle and started the car, and she saw Klosterman get in his truck and speed past her in an aggressive manner. Strunk started driving toward downtown Cincinnati on her way to a doctor's appointment. Strunk did not see Klosterman's truck until she drove to one of the main roads, and then she saw Klosterman's truck behind her. Strunk moved into the right lane, so that Klosterman could pass her, but he did not. Strunk began to feel uneasy as Klosterman continued to follow her through downtown Cincinnati, and onto the interstate. Strunk began recording Klosterman with her cellphone. When Strunk exited from the interstate, Klosterman stopped following her. At that point, Strunk feared for her safety and obtained a protection order against Klosterman.

{¶6} A few days later, Klosterman sent Strunk a text message that was addressed to someone else, but it mentioned Strunk by her first name and also referenced the issues between them. Strunk felt that Klosterman was trying to intimidate her before the next court hearing on the protection order.

{¶7} At the beginning of October 2020, Strunk received a letter terminating the month-to-month lease of her residence. Strunk had never missed her rental

payment, and she did not receive an eviction notice. Strunk believed that Klosterman, who was also her landlord, was retaliating against her. Strunk also learned that Klosterman had sent an email to a city employee in which Klosterman stated that, in November 2020, he had personally visited two of the properties under receivership, both of which were within 500 feet of Strunk's workplace and home.

{¶8} The state charged Klosterman with menacing by stalking and three counts of violating a protection order—one arising from Klosterman's actions in terminating Strunk's lease, one arising from the text message Klosterman sent to Strunk after she had received the protection order, and one arising from Klosterman's actions in November 2020 in which he visited two of the receivership properties near Strunk's workplace and home. The matter proceeded to a jury trial. The jury found Klosterman guilty of all charges, except for the charge of violating a protection order related to the text message. The trial court sentenced Klosterman to a total of 360 days in jail. Klosterman appeals.

## Klosterman's Convictions are not Contrary to Law

{¶9} In his sole assignment of error, Klosterman contends that his convictions were contrary to law.

{¶10} Klosterman argues that his convictions for menacing by stalking and violating a protection order by terminating Strunk's lease were against the manifest weight of the evidence. When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

4

N.E.2d 541 (1997).

{¶11} Klosterman was convicted of menacing by stalking under R.C. 2903.211, which states, in relevant part:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause * * * mental distress to the other person. In addition to any other basis for the other person's belief that the offender will cause * * * mental distress to the other person * * *, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶12} The evidence at trial showed that Klosterman was unhappy that his properties had been foreclosed on by the city and placed in receivership. Klosterman requested that the same management company continue to manage the properties in the receivership, presumably so that Klosterman could keep some control over the properties. Klosterman knew that Strunk, who worked at the management company, would continue to provide Klosterman with information regarding the properties, because Klosterman had previously employed Strunk, and Strunk lived in one of Klosterman's rental properties.

{¶13} Klosterman went to the management office daily to get information from Strunk, and Strunk's boss had to ask Klosterman to stop. Even so, Klosterman continued to get information from Strunk about the properties by confronting her at her residence when he went to collect rent. Then, Strunk discovered that Klosterman had called her former employer pretending to investigate Strunk's unemployment

compensation. Strunk confronted Klosterman over voicemail and told him to back off.

{¶14} Klosterman did not back off, because the next morning, he followed her from her house in Sedamsville, to downtown, and onto the interstate, heading north. Strunk testified that Klosterman's actions caused her mental distress, which she discussed with her therapist, and ultimately, resulted in physical illness and time off work. Based on the evidence presented at trial, Klosterman's conviction for menacing by stalking was not against the manifest weight of the evidence.

{¶15} Klosterman was also convicted of violating the protection order for terminating Strunk's lease. The protection order prohibited Klosterman from interfering with Strunk's right to occupy the residence, from initiating any contact with her, and causing any other person to do any act prohibited by the order. Klosterman argues that the conviction was against the manifest weight of the evidence because he made no direct contact with Strunk, and instead the property manager refused to collect Strunk's rent and signed the eviction letter. Klosterman's argument lacks merit. The state introduced a jail call between Klosterman and his wife where Klosterman told his wife to have his property manager refuse to accept Strunk's rent. Thus, the weight of the evidence supported Klosterman's conviction for violating a protection order.

{¶16} With respect to Klosterman's second conviction for violating a protection order, Klosterman challenges the trial court's admission of evidence related to the email Klosterman sent to a city employee in November 2020, in which Klosterman stated that he had visited two of the receivership properties on Steiner Avenue—both of which happened to be within the area prohibited by the protection order. Klosterman objects to the admission of the email evidence on corpus-delicti

grounds.

**{¶17}** The corpus delicti of an offense is "the body or substance of the crime" and contains two elements: (1) the act itself; and (2) the criminal agency of the act. *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, syllabus. As this court recently stated:

> Before a confession to a crime is admissible, the state must have some
>
> evidence outside of the confession tending to establish the corpus
>
> delicti. The state's evidentiary burden under the corpus delicti rule is
>
> minimal: only a modicum of evidence is necessary to satisfy the rule.
>
> This evidence does not need to relate to every element of the offense and
>
> can be circumstantial.

(Internal quotations and citations omitted.) *State v. Thomas*, 1st Dist. Hamilton No. C-210519, 2022-Ohio-2218, ¶ 14.

**{¶18}** Klosterman argues that his admission via email that he visited the Steiner properties is inadmissible under the corpus-delicti rule because no other evidence exists outside of his "confession" to show that he did, in fact, visit the properties on November 2, in violation of the protection order. We reject Klosterman's corpus-delicti argument because we are not convinced that Klosterman's email to a city employee amounted to a "confession"; moreover, the evidence presented at trial showed Klosterman's pattern of reckless conduct, which satisfies the minimal burden required by the corpus-delicti rule to permit the jury to consider Klosterman's admission.

**{¶19}** A case from the Seventh Appellate District is instructive. In *State v. Moats*, the defendant challenged some of his rape convictions based on the corpus-

delicti rule. *State v. Moats*, 7th Dist. Monroe No. 14 MO 0006, 2016-Ohio-7019. At trial, the child victim testified to an ongoing pattern of anal, oral, and vaginal rape by the defendant. Importantly, the victim did not testify that the defendant had digitally penetrated her. The defendant confessed to police that he had vaginal and oral sex with the victim, and that he had digitally penetrated her on two occasions. The defendant was convicted of several counts of rape, including the counts of digital penetration.

**{¶20}** On appeal, the defendant in *Moats* challenged his convictions for rape by digital penetration, and the defendant argued that the trial court violated the corpus-delicti rule by admitting the defendant's confession without any independent evidence that digital penetration occurred. The *Moats* court rejected the defendant's argument, and the court reasoned that the burden on the state in a corpus-delicti challenge is "minimal" and that the victim's testimony regarding "an ongoing pattern of sexual conduct" by the defendant established "some but not all" of the elements of rape by digital penetration. *Id.* at ¶ 23.

**{¶21}** In this case, Klosterman's ongoing conduct in continually involving himself in the receivership of the properties and in violating the protection order satisfies the minimal burden of the corpus-delicti rule, which would then allow the factfinder to consider Klosterman's admission to violating the protection order in November.

**{¶22}** After Klosterman's properties were foreclosed upon by the city and placed in receivership, Strunk testified that Klosterman requested information regarding the receivership properties on a daily basis. At one point, Klosterman became angry and animated in discussing the properties with Strunk. Even after

Strunk received the protection order against Klosterman, Klosterman continued to contact Strunk—either directly or indirectly. Klosterman texted Strunk and mentioned her by name, but Klosterman pretended that the message had been meant for someone else. Although the jury ultimately acquitted Klosterman of violating the protection order based on the text message, the evidence is still relevant to Klosterman's reckless conduct in November regarding the protection order. The corpus-delicti rule is a rule of admissibility, and therefore, the jury's acquittal happened after the trial court ruled that Klosterman's email "confession" was admissible.

{¶23} After the text-message incident, Klosterman terminated Strunk's lease in violation of the protection order. The evidence showed that Klosterman directed his wife to terminate Strunk's lease, even though Strunk had not missed any rental payments. This evidence is relevant to Klosterman's state of mind regarding the protection order.

{¶24} Finally, the evidence showed that Klosterman continued to involve himself in the receivership properties, despite an order in the receivership litigation prohibiting him from doing so, and with knowledge that Strunk worked for the management company overseeing the receivership properties. Ignoring Klosterman's specific admission to visiting the two Steiner properties, the fact that Klosterman sent an email to a city employee detailing his unhappiness with the receivership of the properties is relevant in and of itself to show his reckless conduct.

{¶25} Therefore, Klosterman's corpus-delicti challenge to his conviction for violating the protection order in November 2020 is not well taken, and his conviction is not otherwise contrary to law.

{¶26} Having concluded that Klosterman's convictions for menacing by stalking and two counts of violating a protection order are not contrary to law, we overrule Klosterman's assignment of error.

## Conclusion

{¶27} We affirm the trial court's judgments convicting Klosterman of menacing by stalking and violating a protection order.

Judgments affirmed.


**BERGERON, J.,** concurs.
**ZAYAS, P.J.**, concurs in part and dissents in part.

**Zayas, P.J.,** concurring in part and dissenting in part.

{¶28} I agree that Klosterman's convictions for menacing by stalking and violating the protection order by interfering with Strunk's right to occupy the premises were supported by sufficient evidence and were not against the manifest weight of the evidence. Accordingly, those convictions should stand. However, I respectfully disagree that the city provided independent evidence, as is required, to establish the corpus delicti of violating a protection order in the appeal numbered C-210444. According, I would vacate that conviction.

{¶29} The corpus delicti of a crime is essentially the fact of the crime itself and contains two elements: (1) the act itself; and (2) the criminal agency of the act. *See State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, syllabus. Before a confession to a crime may be admitted at trial, the state must introduce evidence independent of the confession to establish the corpus delicti. *See State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916), paragraph two of the syllabus. The rule "requires some evidence that a crime was, in fact, committed." *State v. Hopfer*, 112

Ohio App.3d 521, 561, 679 N.E.2d 321 (2d Dist.1996). While the burden on the state to provide evidence of the corpus delicti is minimal, it is well established that there must be "some evidence outside of the confession that tends to prove **some material element** of the crime charged." (Emphasis added.) *Maranda* at paragraph two of the syllabus.

{¶30} Klosterman was convicted of violating a term of the protection order by visiting two properties at 652 and 639 Steiner which were two blocks from Strunk's home and place of employment. Before Klosterman's extrajudicial confession could be admitted as proof that he violated the protection order, the state had to produce some evidence, outside the confession, tending to prove that the protection order was violated. *See Hopfer* at 561.

{¶31} At trial, the state produced evidence that Klosterman was served with the protection order and that the Steiner properties were within 500 feet of Strunk's home and work address. However, this is not evidence that in any way goes towards whether Klosterman committed the offense of violating the protection order.

{¶32} The only testimony at trial regarding the alleged protection-order violation was the testimony of Strunk. Although Strunk testified that at 2:45 p.m. she would have been at work or at home, she testified that she did not see Klosterman visiting the Steiner properties that day. Strunk had gone to inventory a property that day, but she did not mention the location of that property or the time that she was there. Significantly, Strunk did not testify that she received an electronic monitoring unit[1] notification that Klosterman was within 500 feet of her home or employer. Therefore, Strunk's testimony did not contain any evidence that tended to establish or

---

[1] Strunk testified that Klosterman was wearing an electronic monitoring unit, and that she would be contacted if he came within two miles of Sedamsville.

corroborate that Klosterman violated the protection order by coming within 500 feet of her, her home, or her employer.

{¶33} The sole evidence relied on by the state to secure the conviction was the email that Klosterman sent to Jacklyn Martin. Martin, an assistant city solicitor with Cincinnati's Quality of Life Division, testified that she worked to eliminate blighted properties in the city. Martin had received multiple complaints regarding Klosterman's Sedamsville properties and filed a nuisance case against him. The city obtained a judgment of $579,000 and filed a foreclosure action to collect the award. Martin communicated directly with Klosterman regarding the foreclosure because he was representing himself in that matter.

{¶34} On November 3, Martin received an email from Klosterman. Klosterman informed her that he had filed a federal lawsuit against multiple people because he:

> drove to Sedamsville at 2:45 p.m. and decided to check 652 Steiner to see if it was still unsecured. I went to the back door and it was completely opened with no new lock as was claimed by Lintini. I walked out the unlocked front door. I then went to 639 Steiner and went to the backdoor. I turned the handle, and to my shocking surprise it opened.

{¶35} In its closing argument, the prosecution argued that the state established the protection-order violation when "on a third occasion, by his own admission, he entered into the area of Sedamsville" and "blatantly notified the city that he had been there." Accordingly, it is clear that the sole evidence the state relied on to establish that Klosterman violated the protection order by coming within 500 feet of her, her home, or her employer was the email he sent to Martin.

{¶36}  The majority is not convinced that the email should be considered a confession. " 'A confession is an admission of the criminal act itself, not an admission of a fact or circumstance from which guilt may be inferred.' " *State v. Salmon*, 10 Ohio App.2d 175, 182, 226 N.E.2d 784 (8th Dist.1967), quoting 15 Ohio Jurisprudence 2d, Criminal Law, Section 398, at 569 (1955).  Here, Klosterman's email admitting that he visited properties located two blocks from Strunk's home and office is an admission of the criminal act of coming within 500 feet of Klosterman's home and place of employment.

{¶37}  Absent Klosterman's email, the state produced no independent evidence that tends to corroborate or establish that Klosterman violated the protection order.  Aside from Klosterman's confession, there is no evidence or corroboration that such crime even occurred.  Without any independent evidence tending to establish that a crime was committed, Klosterman's email should not have been admitted into evidence.

{¶38}  Despite the lack of any evidence, outside of the email, establishing that Klosterman visited properties within 500 feet of Strunk, the majority concludes that his "pattern of reckless conduct" in violating a separate provision of the protection order and involving himself in the receivership prior to the issuance of the protection order was sufficient to corroborate the offense.  The majority fails to explain how Klosterman's conduct, unrelated to the charged offense, tended to prove "**some material element** of the crime charged." (Emphasis added.) *See Maranda*, 94 Ohio St. 364, 114 N.E. 1038, at paragraph two of the syllabus.

{¶39}  The majority relies on *Moats* to support its conclusion, but that reliance is completely misplaced.  In *Moats*, the defendant was charged with 46 counts of rape

of a child that occurred over a three-year period. *Moats*, 7th Dist. Monroe No. 14 MO 0006, 2016-Ohio-7019, at ¶ 3. Moats confessed to five acts of vaginal rape, three acts of oral rape, and two acts of digital penetration. *Id.* at ¶ 2. The victim testified to an ongoing pattern of sexual penetration that included anal, oral, and vaginal rape by the defendant. *Id.* at ¶ 7. To prove rape, the state had to establish the essential element of sexual conduct, which includes sexual penetration. *Id.* at ¶ 19-20. Although the victim denied that defendant had digitally penetrated her, the victim's "testimony regarding an ongoing pattern of sexual conduct" by the defendant established "some but not all of the material elements of rape by digital penetration." *Id.* at ¶ 23. As the victim's testimony tended to prove a material element of the crime, it satisfied the corpus-delicti requirement.

**{¶40}** Although Klosterman's continued involvement in the receivership established a pattern of conduct with respect to the menacing conviction, this conduct occurred before the protection order was issued and is completely unrelated to any element of the protection-order violation at issue here. Klosterman's interference with Strunk's right to occupy the residence in October sheds no light on whether he visited the properties in November. None of Klosterman's prior conduct provides any evidence that Klosterman violated the protection order by coming within 500 feet of her home and employer. Thus, the state presented no evidence outside of the confession that tended to prove some material element of the crime charged. *See id.*; *Hopfer*, 112 Ohio App.3d at 561, 679 N.E.2d 321. Aside from Klosterman's email, there is no evidence that such crime even occurred.[2]

---

[2] I note that it is precisely this type of situation that gave rise to the requirement of evidence of the corpus delicti as a foundation for admitting a confession.

"The corpus delicti rule, as employed in the context of extrajudicial confession, is informed by a desire to protect unfortunate persons who confess to crimes that they not only did not commit

{**¶41**} Because absolutely no evidence was presented to establish that Klosterman violated the protection order, aside from Klosterman's email, I must hold that the corpus delicti was not established, and the confession was inadmissible. Without the confession, no crime was proven. I would reverse the conviction.


Please note:

  The court has recorded its own entry this date.

---

themselves, but which were never committed by anyone. Before the rule was formed, it sometimes happened that a person would confess to killing another, be convicted of that killing and put to death, only to have the supposed murder victim turn up later, alive and healthy." *State v. Nobles*, 106 Ohio App.3d 246, 261, 665 N.E.2d 1137 (1995), citing *Maranda*, 94 Ohio St. at 370, 114 N.E. 1038.